**Kathleen HARVET, Appellant,**

**v.**

**UNITY MEDICAL CENTER, INC., et al., Respondents.**

**No. C4–88–522.**

Court of Appeals of Minnesota.

Aug. 23, 1988.

Karen A. Risku, Andrew E. Tanick, Lapp, Laurie, Libra, Abramson & Thomson, Minneapolis, for appellant.

James M. Dawson, Paul J. Zech, Felhaber, Larson, Fenlon & Vogt, Minneapolis, for respondents.

Heard, considered and decided by LANSING, P.J., and KALITOWSKI and SHORT, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant commenced an action seeking damages as a result of the termination of her employment. Appellant's complaint alleged five separate theories of recovery: negligent termination, intentional infliction of emotional distress, breach of an implied covenant of good faith and fair dealing, breach of an implied employment contract, and defamation.

The trial court granted Unity Hospital's motion for summary judgment on all claims, holding Unity's employee handbook was sufficiently definite to form an employment contract, but Unity did not breach that contract by terminating appellant for theft. As to the defamation claim, the court held Unity's statements about appellant were privileged as a matter of law. On appeal appellant challenges the dismissal of the breach of contract and defamation claims.

Unity Hospital filed a notice of review of the trial court's determination that its employee handbook created a unilateral contract arguing that no contract exists because of disclaimers in the handbook reserving to the employer the exclusive right to make employment decisions.

## FACTS

Appellant, Kathleen Harvet, was hired by respondent, Unity Hospital, in 1976 for a part-time position in the hospital's dietary department. At the time she was hired, she did not receive any form of employment contract and was not informed she would be working for any specific period of

time. Appellant did receive a set of Employee Rules of Conduct. In 1979, she began full-time work in the same area. In 1983, Unity distributed a new employee handbook to all of its employees, including appellant, which outlined rules of conduct and disciplinary procedures.

The incident which is the subject of this appeal occurred on October 18, 1985. While having coffee with three other dietary department employees, appellant asked Barbara Cropper, a part-time cook, if she could buy some servings of leftover seafood casserole. After she filled the pans for the patients' consumption, Cropper filled a container for appellant with extra uncooked seafood casserole and placed the container in a refrigerator.

Later that morning, Sherry Hanson, a supervisor, noticed the container of casserole in the refrigerator with appellant's name on it. Hanson informed Ann Poce, assistant food service director, of what she saw and they both told Unity security guard Mark Tabara they believed food was going to be taken from the department.

At approximately 2:15 p.m. appellant finished her shift for the day. She took the five-pound cottage cheese container out of the refrigerator and ran to catch up with her co-employees as they left. Appellant carried the container in her arm. Taking her usual route, she walked down the hall toward the employee's exit. As she approached the hospital exit she was stopped by Tabara who was conducting an unannounced spot check of items leaving the hospital. Tabara asked appellant what was in the cottage cheese container, and she replied that it was leftover seafood casserole. Tabara asked to see her receipt and she stated she had forgotten to get one.

Appellant's supervisor, Sherry Hanson, was contacted by appellant. Appellant asked Hanson if it would be possible for her to leave without a supervisor's signature. Hanson informed appellant that she could not authorize the removal of the product because it had already left the department without a supervisor's signature. Appellant left the security office and took the casserole back upstairs, returning

to the cafeteria and paying $3.94 for what she contends amounted to three servings of seafood casserole. Appellant then went back to the security office, showed her receipt and left.

After appellant left the building, Tabara and Hanson met with the dietary cashier Kitty Robins and inquired as to whether appellant had paid for the seafood casserole. Robins indicated appellant had not paid for any food product until only a few minutes before.

On October 24, 1985, appellant met with personnel director Patrick Langan to review the incident of October 18. Appellant had been on suspension pending this meeting and an investigation of the incident.

After reviewing the matter and speaking with Hanson and Tabara, as well as reviewing all the reports surrounding the incident the decision was made to dismiss appellant for unauthorized removal of food from the dietary department.

On November 15, 1985, appellant filed her initial grievance under the hospital's grievance procedure. During the grievance process, appellant's termination decision was reviewed at four separate levels. The final decision was made by the hospital's chief operating officer, Donald Leiverman. By letter dated January 3, 1986, Mr. Leiverman affirmed appellant's termination. Appellant then filed this lawsuit. The trial court granted Unity's motion for summary judgment on all claims.

### ISSUES

1. Did the trial court properly find as a matter of law that Unity's employee handbook created a unilateral contract?

2. Did the trial court correctly hold there were no genuine issues of material fact regarding the termination of appellant and as a matter of law any contract existing between the parties was not breached?

3. Did the trial court properly grant summary judgment on appellant's claim of defamation?

## ANALYSIS

### I.

 Absent an express contract the usual employer-employee relationship is terminable at will by either party. *Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962). However, it is well settled, Minnesota recognizes a modification of an employment-at-will relationship by adoption of a company's policy manual or handbook. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). The Minnesota Supreme Court has said:

> [T]he resolution of whether the language used rises to the level of a contract is for the court. Where * * * the intent of the parties is totally ascertainable from the writing, construction is for the court.

*Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 856 (Minn.1986); *see Gates Rubber Co. v. Porwoll*, 395 N.W.2d 92 (Minn.Ct.App. 1986).

 It is undisputed appellant was not hired for any specific period of time and her employment was essentially indefinite. Thus, the only contract formation issue is whether the language in the employee handbook was sufficiently definite to constitute an offer. In *Pine River*, the supreme court recognized an exception to employment-at-will and stated that to form an employment contract a handbook must be more than an employer's general statement of policy. *Pine River*, 333 N.W.2d at 626. The handbook must contain terms sufficiently definite for the fact finder to be able to determine whether there has been a breach. *Hunt*, 384 N.W.2d at 857.

Unity objects to the trial court's determination that its employee handbook formed a unilateral contract, arguing its employee handbook was not sufficiently definite to form a contract. They cite the fact appellant was at all times free to leave her employment and accept another job and that appellant does not recall any provision in the employee handbook entitling her to be terminated only for just cause.

 Respondent's argument is without merit. Unity's handbook contained detailed provisions on conduct and procedures for discipline. As the trial court observed, "there can be no question that [respondent's] handbook provisions are sufficiently definite to form a contract." The handbook represents much more than Unity's general statement of policy. Moreover, the terms of the handbook were sufficiently definite to allow a fact finder to determine whether there had been a breach. *Hunt*, 384 N.W.2d at 857. *See also Pine River*, 333 N.W.2d at 627.

Respondent also argues that this court has recognized statements contained in an employee handbook which reserve discretion or otherwise indicate an absence of contractual intent on the part of the employer are sufficient to prevent a successful wrongful discharge claim based on an alleged breach of an employee handbook contract. *See Simonson v. Meader Distribution Company*, 413 N.W.2d 146, 148 (Minn.Ct.App.1987) (citing *Corum v. Farm Credit Services*, 628 F.Supp. 707 (D.Minn. 1986)). Respondent contends the handbook contained the following reservations on the part of the employer indicating it was not being offered as a contract: "Exceptions to any personnel policy or procedure may be permitted on a documented form showing of good and sufficient cause."

 The facts of this case and the handbook in question are distinguishable from *Simonson*. In *Simonson*, the reservation clauses were specifically laid out in the policy manual. More important, the reservation clauses in *Simonson* were clear, concise and understandable in their intent and effect. In the present case the trial court correctly found, "the clause does not clearly tell employees that the handbook is not part of an employment contract."

### II.

 A district court may grant summary judgment if the pleadings and other documents before the court "show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn.R.Civ.

P. 56.03 (1986). On appeal from summary judgment, it is the function of the appellate court to determine whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The rule in Minnesota is summary judgment is proper where the non-moving party fails to provide the court with specific facts indicating that there is a genuine issue of fact. *Erickson v. General United Life Ins. Co.,* 256 N.W. 2d 255, 258–59 (Minn.1977).

In granting Unity's motion for summary judgment, the trial court found:

> The undisputed facts are that plaintiff left the department without paying for the casserole, had no written authorization to remove it from the department, did not pay for it until she was confronted by security personnel on her way out of the building, had received uncooked casserole rather than leftovers, and had more servings than she eventually paid for. Defendants clearly had sufficient grounds to conclude that plaintiff's actions constituted theft.

Appellant contends the trial court erred in granting summary judgment because there exists genuine issues of material fact. We agree.

■ Unity's handbook permits termination of employees for "theft" which is not defined. Appellant argues she had no intent to steal and without intent there can be no theft. To support her claim that her failure to pay for the food was inadvertent, appellant points out that she announced her intention to buy leftover casserole in the presence of coworkers and walked through the hospital hallways with the casserole in plain view. These facts raise an issue as to whether there was a theft within the meaning of the term in the employment handbook sufficient to make summary judgment inappropriate.

■ Summary judgment has been described as a "blunt instrument" to be employed "only where it is perfectly clear that no issue of fact is involved * * *." *Donnay v. Boulware,* 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966). If any doubt exists as to the existence of a genuine issue of material fact, the doubt must be resolved in favor of finding that the fact issue exists. *Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974). Here there are genuine issues of material fact to be resolved.

### III.

The trial court also granted Unity's motion for summary judgment on appellant's claim for defamation. The trial court relied on two determinations. First, a qualified privilege attached to the hospital's comments, as a matter of law. Second, appellant failed to establish a genuine issue of material fact that would support a claim of malice such that the hospital's privilege would be lost.

■ In order for a statement to be considered defamatory, it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him or her in the estimation of the community. *Stuempges v. Park, Davis & Co.,* 297 N.W. 2d 252, 255 (Minn.1980).

The trial court found there were sufficient facts to support the publication element of the defamation claim because numerous intra-corporate communications were made regarding the termination of appellant. However, even though an untrue defamatory statement has been published the originator of the statement will not be held liable if the statement is published under circumstances that make it conditionally privileged and if the privilege is not abused. Restatement (second) of Torts § 593 (1977). The law in Minnesota is:

> [A] communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

*Stuempges,* 297 N.W.2d at 256–57 (quoting *Hebner v. Great Northern Railway,* 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899)).

The doctrine of privileged communication rests upon public policy considerations. The existence of a privilege results from the court's determination that statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory. Whether an occasion is a proper one upon which to recognize a privilege is a question of law for the court to determine. *Lewis,* 389 N.W.2d at 889.

The applicability of the qualified privilege doctrine in a situation where an employer communicates to an employee the reasons for her discharge was confirmed in *Lewis.* "It is in the public interest that information regarding an employee's discharge be readily available to the discharged employee and to prospective employers, and we are concerned that, unless a significant privilege is recognized by the courts, employers will decline to inform employees of reasons for discharges." *Lewis,* 398 N.W.2d at 890.

Appellant acknowledges the trial court correctly ruled the statements were subject to a qualified privilege. Appellant's sole challenge is to the determination by the trial court that appellant failed to meet the burden of proving actual malice required to overcome the privilege. This they argue is a jury question.

The law recognizes essentially two definitions of malice in defamation cases: the "actual malice" definition as set forth in *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964) and the common law definition. *See Stuempges,* 297 N.W.2d at 257. Minnesota recognizes the common law definition in the employer-employee situation because it focuses on the employer's attitude toward the employee. *Id.* at 258. Under the common law definition, malice exists where the defendant " 'made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff.' " *Id.* at 257 (quoting *McKenzie v. William J. Burns Inter-*

*national Detective Agency, Inc.,* 149 Minn. 311, 312, 183 N.W. 516, 517 (1921).

Appellant's assertion that the issue of malice is always a jury question is without merit especially in light of the facts of this case. In *Frankson v. Design Space International,* 394 N.W.2d 140 (Minn.1986) the supreme court noted that where the totality of the evidence did not support a finding of malice, the matter should not have been submitted to the jury. *Id.* at 145.

In the present case allegations made by appellant in support of her claim of malice are based on conjecture and speculation and are insufficient to create a jury question. The trial court record shows no facts which would lead to the conclusion that Unity Hospital or any of its employees acted against her out of malice or ill will. Thus, there is no credible evidence to suggest there is a factual dispute concerning the existence of malice which should go to a jury.

## DECISION
AFFIRMED IN PART, REVERSED IN PART.