**Sharon Y. BAUER, Respondent,**

v.

**STATE of Minnesota, et al., Appellants,**

and

**Roger VanBuren, et al., Petitioners, Appellants.**

No. C8–91–2302.

Supreme Court of Minnesota.

Feb. 4, 1994.

Hubert H. Humphrey, III, Atty. Gen., Sharon A. Lewis, Sp. Asst. Atty. Gen., St. Paul, for appellants.

Gregg M. Corwin, Mary L. Setter, Gregg M. Corwin & Associates, St. Louis Park, for respondent.

SIMONETT, Justice.

In this case, we conclude that official immunity does not apply to a defamation action against public officials. We reverse and remand to the trial court.

Some facts and procedural background are necessary to put the issue on appeal in its proper setting. Plaintiff-respondent Sharon Y. Bauer was employed by the State of Minnesota at its Faribault Regional Treatment Center. She held the position of program plan coordinator for developmentally-disabled clients in the building where defendant-appellant Roger VanBuren was group supervisor and defendant-appellant Jane Richert was assistant group supervisor.

About September 1987, plaintiff began complaining to her supervisors that her clients were not getting proper treatment, and from there matters deteriorated. Investigations were conducted. Memos and notes were made and kept by defendants. Three times plaintiff was suspended for insubordination, and twice, in arbitration proceedings, an arbitrator set aside the suspensions. Finally, in July 1991, after plaintiff failed to return to work from a medical leave of absence, her employment was terminated.

Plaintiff commenced suit in 1990 and amended her complaint in 1991. Her claims for sex discrimination, unfair labor practice, and constitutional violations against the defendant State of Minnesota were dismissed, but her "whistleblower" claim against the State remains for trial. Of immediate concern in this appeal is the defamation claim against defendants VanBuren and Richert personally.

The trial court denied defendants' summary judgment motion to dismiss the defamation claim against them. The judge concluded that "absolute privilege" did not apply, citing *Rico v. State of Minnesota*, 472 N.W.2d 100 (Minn.1991). The court then stated that "the defendants have asserted the claim of qualified privilege, which can be defeated by a showing of malice"; and, said the court, malice was a fact question for trial.

The court of appeals deemed the denial of defendants' claim of official immunity appealable and, in an unpublished opinion, affirmed the trial court. The court of appeals ruled that malice was a fact issue. The court quoted *Rico*, where we said that malice is present "when an official intentionally commits an act that he or she then has reason to believe is prohibited," 472 N.W.2d at 107; and that maliciousness depends on the "legal reasonableness of the official's actions." *Id.* at 108.

We granted defendants' petition for further review. Defendants frame the issue as whether *Rico* entitles them "to a court determination of whether they intentionally committed a known wrong * * * before being forced to trial on the claims asserted against them." Plaintiff-respondent, on the other hand, states the issue in her brief as "[w]hether VanBuren and Richert qualify for official immunity from suit for the common law defamation claim * * *."

Official immunity is a long-established common law doctrine. For example, in a 1925 case, *Stevens v. North States Motor, Inc.*, 161 Minn. 345, 201 N.W. 435 (1925), this court held that county commissioners sued for negligent construction of a road were immune from suit, absent a willful wrong. More recently, in *Elwood v. County of Rice*, 423 N.W.2d 671 (Minn.1988), we applied official immunity to immunize deputy sheriffs from liability for an illegal entry of a home. And most recently, in *Pletan v. Gaines*, 494 N.W.2d 38 (Minn.1992), we held that police officers who engaged in a dangerous high-speed car chase of a fleeing suspect were immune from suit under the doctrine. Official immunity, we said in *Pletan*, applies to public officials who must exercise judgment and discretion at the operational level, as contrasted with statutory discretionary function immunity which applies to governmental units and their employees at the policymaking level of government. *Id.* at 40.

Significantly, it does not appear that official immunity has ever been applied to public officials charged with common law defamation. Defendant-appellants rely on *Rico v. State*, 472 N.W.2d 100 (Minn.1991), but in that case official immunity was applied to a retaliatory discharge claim. Defamation was not involved.

A decision to discharge an employee may well involve official immunity, as it did in *Rico*, because the decision involves judgment and discretion at the operational level of government. But official immunity does not fit defamation. In defamation, the essential focus is not so much on alternative courses of conduct and the reasonableness of the actor's conduct, as it is in most torts, but on the nature of the published statement. "One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true." Restatement (Second) of Torts § 581A (1977). Truth is sometimes said to be relative but it is hardly discretionary. A true statement does not depend on the judgment of the speaker, but on its accordance with the facts; either the statement is true or it is not, and there is no discretionary conduct for official immunity to cover and protect. Whether the defendant knew or should have known his statements were false may involve an exercise of discretion and judgment, but this goes to the separate issues of qualified privilege and malice, not to whether there has been a defamatory false statement.

■ Defamation, which is another name for libel and slander, is an intricate tort with its own set of special rules. The statement must be defamatory. It must be false. And it must be published. Even then, assuming no constitutional or other problems, the statement is qualifiedly privileged if made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn.1980); *see also Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380–81 (Minn.1990). To defeat this qualified privilege, the plaintiff must prove actual malice. Actual malice means what it says: ill-will and improper motive or wishing wantonly and without cause to injure the plaintiff. *Id.* at 257; *McKenzie v. William J. Burns Int'l Detective Agency, Inc.*, 149 Minn. 311, 312, 183 N.W. 516, 517 (1921). The *Rico* malice standard, on the other hand, is a different standard. *See Rico*, 472 N.W.2d at 107 n. 5 (acknowledging that common law

malice "has a distinct definition"). Because official immunity applies to discretionary conduct, the test for a malicious wrong is the "legal reasonableness of the official's actions." *Rico* at 108.[1] To engraft this inapposite standard on common law defamation would only complicate and confuse an already complicated cause of action.

In *Johnson v. Dirkswager,* 315 N.W.2d 215 (Minn.1982), the Commissioner of Welfare was sued for defamation by a state hospital superintendent whose termination he had announced. We held that high-level, executive-type government officials had an "absolute privilege" to publish defamatory statements. We stressed that "[w]e are dealing, it must be remembered, only with top-level, cabinet-equivalent executives * * *," *id.,* and we cited Restatement (Second) of Torts § 591 (1977) (absolute privilege for "superior executive officers of a state"). Significantly, we did not say in *Dirkswager* that the Commissioner was entitled to either statutory discretionary function immunity or official immunity. There is also an "absolute privilege" for defamatory statements made by public officials acting in a judicial or quasi-judicial capacity. Thus school board members have an absolute privilege for allegedly defamatory statements made in connection with quasi-judicial proceedings involving termination of a teacher. *Freier v. Independent Sch. Dist. No. 197,* 356 N.W.2d 724, 729 (Minn.App. 1984). In this case, there is no claim that defendants VanBuren and Richert were either high-level executives or officials acting in quasi-judicial proceedings.

Nor do we think *Carradine v. State,* 511 N.W.2d 733 (Minn.1993), also decided this day, is of assistance to plaintiff. In *Carradine,* we held that a police officer has an absolute immunity from a civil suit in defamation for statements made in his written arrest report. We noted the police report can be a critical part of the law enforcement process, both at the prosecutorial charging stage and again frequently at the trial itself. Because of the importance of complete, detailed arrest reports, we concluded that police officers should be free of the fear of civil defamation suits based on the contents of their reports.

In this case, however, the governmental interests involved do not raise public policy considerations of the same urgency as *Carradine.* Instead, we have allegedly defamatory statements made within the context of an administrative personnel matter, not unlike those that occur in the private sector.

We conclude, therefore, that defendants are entitled to neither official immunity nor absolute privilege in this defamation action.

This case, then, is governed by the common law doctrine of qualified privilege. Assuming at least some of defendant's statements were defamatory, these statements were written down by plaintiff's supervisors to document plaintiff's behavior in connection with her job performance and, hence, appear to be entitled to a qualified privilege.

■ The real question seems to be the trial court's ruling that actual malice was a fact issue for the jury in this case. In *Stuempges,* we said that actual malice is "generally" a question of fact. 297 N.W.2d at 257. In *Frankson v. Design Space Int'l,* 394 N.W.2d 140, 144 (Minn.1986), we said that actual malice "is a jury question," but this was not an abstract proposition to be taken literally. Indeed, in *Frankson* we reversed as a matter of law the jury's finding of actual malice. *Id.* at 145.

The test for actual malice is whether the defamatory statement was made "from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Stuempges,* 297 N.W.2d at 257 (quoting *McKenzie,* 149 Minn. at 312, 183 N.W. at 517). It should be kept in mind, however, if a defamatory statement has been found to be conditionally privileged, that "[w]hen so privileged, the law does not imply malice from the communication itself, nor from its falsity * * *," *Friedell v. Blakely*

---

1. Ironically, if the *Rico* objective standard of malice were to be applied here, as the defendants want, it would seem that the defendants' conduct would be malicious in the *Rico* sense. Presumably VanBuren and Richert know that defama-tion is prohibited conduct, and, under *Rico,* it is enough that the official intentionally commits an act knowing it to be prohibited. If anything, this illustrates the inappropriateness of the *Rico* standard of malice in a defamation case.

*Printing Co.,* 163 Minn. 226, 231, 203 N.W. 974, 975 (1925); if this were not so, qualified privilege would be a mirage. Malice can be shown, of course, by direct proof of personal spite, but not every personality conflict, where the parties simply in exasperation trade insults, suffices in this regard. As we said in *Frankson,* malice can also be shown by "intrinsic evidence," and we mentioned "the exaggerated language of the libel, the character of the language used, the mode and extent of publication, and other matters in excess of the privilege." 394 N.W.2d at 144 (quoting *Friedell, supra* ).

In this case it appears the incorrect *Rico* standard of malice may have influenced the ruling on the summary judgment motion. In any event, the case returns to the trial judge for further proceedings.

Affirmed in part, reversed in part, and remanded.

GARDEBRING, and PAGE, JJ., took no part in the consideration or decision of this case.