**Malcolm E. BOLTON, Appellant,**

v.

**DEPARTMENT OF HUMAN SERVICES, STATE OF MINNESOTA, et al., Respondents.**

No. C0–94–1711.

Court of Appeals of Minnesota.

Feb. 7, 1995.

Review Granted March 29, 1995.

taliatory discharge, negligent infliction of emotional distress, and violation of Bolton's rights under 42 U.S.C. § 1983. The court issued a separate order denying Bolton's request to submit additional evidence and to extend the time for discovery. Bolton has challenged both orders on appeal from the final judgment entered pursuant to the court's summary judgment order. We affirm in part, reverse in part, and remand for additional proceedings on Bolton's claims for defamation by action and negligent infliction of emotional distress.

## FACTS

Malcolm Bolton was employed by the Fergus Falls Regional Treatment Center (treatment center) as a social work specialist. Bolton's duties included providing social work services to developmentally disabled residents of the treatment center.

Bolton was a member of a discharge planning team that met in the fall of 1990 to consider whether a developmentally disabled resident of the treatment center, "L.K.," should be placed in a community group home. The team decided that outside placement was appropriate for L.K. Although Bolton did not believe that a complete evaluation had been performed, he did not formally object or pursue any internal process to challenge the placement. Instead, he hired private counsel and filed a petition in district court, requesting that the court appoint him as L.K.'s private guardian.

Bolton's supervisor, Elaine Eastman, and two of the treatment center's directors, Bill Klein and Mike Fitzgerald, were concerned that Bolton's private guardianship petition created a conflict of interest. They discussed their concerns with Bolton, but Bolton refused to withdraw the guardianship petition.

The treatment center's Chief Executive Officer, Elaine Timmer, ordered an investigation and eventually fired Bolton, documenting her reasons in a letter to him. On Bolton's last day at the treatment center, Bill Klein accompanied Bolton to his office, stayed while he packed his belongings, and then, in full view of other employees, accom-

Malcolm E. Bolton, pro se.

Hubert H. Humphrey, III, Atty. Gen., Gordon L. Moore, III, Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by KLAPHAKE, P.J., LANSING and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

The district court issued an order for summary judgment on Malcolm Bolton's claims against respondents for defamation, violation of the "Whistleblower Act," common law re-

panied him to the main entrance of the treatment center.

Bolton sued respondents Timmer, Klein, Fitzgerald, Eastman, the treatment center, and the Minnesota Department of Human Services, alleging defamation, violation of Minnesota's "Whistleblower Act," common law retaliatory discharge, violation of 42 U.S.C. § 1983, and negligent infliction of emotional distress. Respondents moved for summary judgment, and the district court heard the parties' arguments on the motion. Three weeks later, Bolton brought a motion to submit additional evidence and to extend the time for discovery. The court denied Bolton's motion and granted respondents' motion for summary judgment. This appeal followed.

### ISSUES

1. Did the district court err by denying Bolton's motion to submit additional evidence and to extend the time for discovery?

2. Did the district court err by ordering summary judgment on Bolton's claims of retaliatory discharge and violation of the Whistleblower Act?

3. Are respondents entitled to official immunity against Bolton's claims for violation of 42 U.S.C. § 1983?

4. Did Bolton's discharge deprive him of a liberty or property interest?

5. Are respondents entitled to a qualified privilege?

6. Did Bolton adequately support his claim of defamation by action?

7. Did the district court err by dismissing Bolton's claim for negligent infliction of emotional distress?

### ANALYSIS

I. *Discovery*

■ Bolton commenced this lawsuit in November 1992. Respondents moved for summary judgment almost one year later, in October 1993. The district court heard the motion on December 16, 1993. On January 4, 1994, before the court decided the motion, Bolton brought a motion asking the court to allow him to submit additional evidence and to extend the time for discovery. The court denied Bolton's motion.

■ Under Minn.R.Civ.P. 56.06,[1] the court has "great discretion" to determine the procedural calendar of a case, and "continuances should be liberally granted." *Rice v. Perl*, 320 N.W.2d 407, 412 (Minn.1982).

While recognizing this presumption in favor of granting continuances to allow sufficient discovery, we must consider two questions: (1) was Bolton diligent in seeking or obtaining discovery prior to consideration of respondent's summary judgment motion; and (2) was Bolton merely engaging in a "fishing expedition," or was he seeking further discovery because of a good-faith belief that material facts would be uncovered? *See id.*

Bolton made some attempt to obtain discovery before the summary judgment motion—he submitted several sets of interrogatories and a request for production of sixteen documents. The responses to Bolton's interrogatories were not very helpful. Nevertheless, Bolton did not request additional time for discovery until approximately three weeks after the court heard respondents' summary judgment motion. This fact weighs heavily against Bolton's diligence in obtaining discovery.

Furthermore, Bolton's affidavit stated only a belief that "evidence [was] available" to support his lawsuit, without specifying what that evidence might have been. We note that Bolton's attorney, who was hired shortly before a response to the summary judgment motion was due, submitted an affidavit stating that he believed depositions of Timmer, Klein, Fitzgerald, and Eastman would be necessary to respond properly to the sum-

---

1. The rule provides:
 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present, by affidavit, facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

mary judgment motion. Bolton's counsel also stated in the affidavit that he had obtained affidavits from the treatment center's employees and others bearing directly on the issues raised in respondents' summary judgment motion. Bolton's counsel indicated that "discovery thus far has been totally inadequate to respond to defendant's motion" and that "the form, format, and content of plaintiff's work was not apt to impress the court."

Nevertheless, these facts do not explain why neither Bolton nor his attorney submitted the motion for discovery in a timely manner. After considering the facts in the record and applying the factors expressed in *Rice*, we conclude that the district court properly denied Bolton's motion to submit additional evidence and to extend the time for discovery.

## II. *Retaliatory Discharge and Whistleblower Act*

■ Reviewing the facts in the light most favorable to Bolton, we must determine whether there are any genuine issues of material fact and whether the district court erred in applying the law. *See State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990).

■ Bolton's complaint alleged a claim for common law retaliatory discharge as a result of his refusal to withdraw the guardianship petition. Generally, common law claims for retaliatory discharge have been displaced by the Whistleblower Act. *See Phipps v. Clark Oil & Ref. Corp.*, 408 N.W.2d 569, 571 (Minn. 1987) (noting that after enactment of the Whistleblower Act, the court was no longer required to consider the policy question of whether Minnesota should recognize a cause of action for wrongful discharge); *Piekarski v. Home Owners Sav. Bank*, 956 F.2d 1484, 1493 (8th Cir.1992) (rejecting plaintiff's common law claim for retaliatory discharge independent of his action under the Whistleblower Act), *cert. denied,* — U.S. ——, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992).

The Whistleblower Act prohibits an employer from discharging an employee who, in good faith, refuses an order to violate a law or "reports" a violation or suspected violation

of a law. Minn.Stat. § 181.932, subd. 1(a), (c) (1992).

The district court concluded that Bolton's guardianship petition did not allege or "report" a violation or suspected violation of any law by respondents. We agree. Furthermore, the record does not support Bolton's claim that he refused to withdraw the petition because he believed the treatment center was violating a state or federal law. Rather, Bolton refused to withdraw the petition because he believed he was not authorized to do so. Thus, the district court did not err in granting summary judgment on Bolton's retaliatory discharge and Whistleblower Act claims.

## III. *Official Immunity*

■ Bolton alleged in his complaint that respondents fired him in violation of 42 U.S.C. § 1983 for exercising his right to free speech and his right to petition the government for redress of grievances. The district court dismissed this claim on the basis that respondents were entitled to official immunity.

■■ An official is entitled to immunity when the official has not violated clearly established law. *Finch v. Wemlinger*, 361 N.W.2d 865, 868 (Minn.1985). Whether an official's conduct violated clearly established law is generally a question of law that may be resolved by summary judgment. *Anderson v. City of Hopkins*, 400 N.W.2d 350, 354 (Minn.App.1987).

In situations involving alleged violations of an employee's right of free speech, the courts have balanced the interests of the employee in commenting on matters of public concern against the interests of the state employer in promoting efficient public services. *See, e.g., Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

Here, Bolton's petition for guardianship constituted a comment on a matter of public concern—i.e., the rights of developmentally disabled individuals to private guardianship. Bolton claims that respondents knew they were violating L.K.'s rights to private guardianship. But respondents have presented

countervailing interests as a basis for the discharge, i.e., their interest in maintaining a work place free from conflicts or apparent conflicts of interest, their interest in promoting their own decision-making and appeal processes, and their interest in enforcing their orders and work hours.

To penetrate the government officials' qualified immunity, the balance must be in favor of the employee to a degree that evidences a clearly established right. The unlawfulness of the act must be apparent in the light of pre-existing law.

*McIntire v. State*, 458 N.W.2d 714, 718 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 28, 1990). We conclude that Bolton has not counterbalanced respondents' interests to such a degree as to penetrate their official immunity.

## IV. *Due Process*

Bolton argues that his discharge deprived him of a liberty and/or property interest, in violation of his Fourteenth Amendment due process rights.

■ Any due process property rights to which Bolton is entitled must be based upon a property interest in continued employment. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Bolton has not produced any evidence of a "legitimate claim of entitlement" to his job, as evidenced by a contract or understanding that conferred upon him a right to continued employment. *Id.*

■ A government employee has a due process right to a hearing to clear his name if his dismissal is accompanied by a charge that "might seriously damage his standing and associations in his community." *See id.* at 573, 92 S.Ct. at 2707. But if the charge against the employee is not made public, it is not a basis for a claim that the employee's reputation has been damaged. *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). In addition, the employee must show that he suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976).

■ No liberty interest is implicated where an employer does not inform prospective employers or the community at large of the reason for the employee's dismissal and the employee does not demonstrate that any employment opportunities were foreclosed by the employer's action. *See McIntire*, 458 N.W.2d at 719. Bolton has not alleged that respondents informed prospective employers or the community at large of the reasons for his dismissal. Nor has he alleged any tangible employment opportunities that have been foreclosed by respondents' disclosures of the reasons for his discharge. Thus, we conclude that Bolton's discharge did not violate his due process rights. *See Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir.1991) ("The mere existence of damaging information in [an employee's] personnel file cannot give rise to a due process challenge.").

## V. *Qualified Privilege*

■ Bolton claims that at the time of his discharge he received letters signed by Timmer and Eastman and adopted by Klein and Fitzgerald containing false and misleading statements about his actions involving the guardianship petition. Bolton also claims that he will be forced to self-publish respondents' defamatory allegations.

■ A defamatory statement must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community.

*Stuempges v. Parke, Davis & Co.* 297 N.W.2d 252, 255 (Minn.1980). A statement is qualifiedly privileged if it is "made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause." *Bauer v. State*, 511 N.W.2d 447, 449 (Minn.1994). The privilege results from a belief that "statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory." *Harvet v. Unity Medical Ctr., Inc.*, 428 N.W.2d 574, 579 (Minn.App.1988). "Whether an occasion is a proper one upon which to recognize a privilege is a question of law for the court to determine." *Lewis v.*

*Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 889 (Minn.1986).

In *Bauer,* the court concluded that statements documenting an employee's behavior in connection with her job performance appeared to be entitled to a qualified privilege. 511 N.W.2d at 450. In *Lewis,* the court stated that "an employer's communication to an employee of the reason for discharge may present a proper occasion upon which to recognize a qualified privilege." 389 N.W.2d at 890.

> It is in the public interest that information regarding an employee's discharge be readily available to the discharged employee and to prospective employers, and we are concerned that, unless a significant privilege is recognized by the courts, employers will decline to inform employees of reasons for discharges.

*Id.* We conclude that respondents were entitled to a qualified privilege when providing Bolton with written information regarding the reason for his discharge.

■ To defeat the qualified privilege, a plaintiff must prove abuse of the privilege. *Id.* Abuse may be shown where there is actual malice. The test is whether the statement was made "from ill-will or improper motive," or "causelessly and wantonly for the purpose of injuring the plaintiff." *Bauer,* 511 N.W.2d at 450. Malice may be shown by direct proof of personal spite or by "intrinsic evidence," such as "the exaggerated language of the libel, the character of the language used, the mode and extent of publication, and other matters in excess of the privilege." *Id.* at 451. Actual malice is usually a question of fact for the jury. *Id.* at 450. But summary judgment is appropriate on the issue of actual malice where the plaintiff's allegations are "based on conjecture and speculation and are insufficient to create a jury question." *See Harvet,* 428 N.W.2d at 579.

In this case, the district court properly concluded that Bolton had produced no evidence of actual malice. The written language was not exaggerated or excessive, and Bolton produced no evidence of personal spite. Thus, respondents are entitled to a qualified privilege.

## VI. *Defamation by Action*

■ Bolton also claims that he was defamed when Klein accompanied him to his office and to the building entrance with all of his belongings in the middle of the business day. The district court concluded that this did not constitute a "statement" for defamation purposes. We disagree.

■ Language is a "social instrument" used for the "communication of ideas." Walter C. Coffey, *The Need for Understanding,* 43 Minnesota Alumnus 270 (May 1944), *quoted in Gershcow v. Homeland Ins. Co. of America,* 217 Minn. 568, 573, 15 N.W.2d 88, 90 (1944). It is "the device whereby we communicate with our fellow men." *Id.* "Language" may include gestures or actions; communication is not a captive of the voice.

Case law from other jurisdictions indicates that a claim for defamation may be supported by actions rather than words. *See, e.g., General Motors Corp. v. Piskor,* 27 Md. App. 95, 340 A.2d 767 (Ct.Spec.App.1975) (employee who was accosted by security guards as he and other employees were leaving the plant, and whose jacket was searched for automobile parts, had action for slander per se), *rev'd on other grounds,* 277 Md. 165, 352 A.2d 810 (1976) ("General Motors has conceded, as it must, that defamatory matter may be published by actions and gestures as well as by the written and spoken word."); *Schultz v. Frankfort Marine Accident & Plate Glass Ins. Co.,* 152 Wis. 537, 139 N.W. 386 (1913) (public surveillance by a private detective agency held actionable).

In *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 742 F.Supp. 1359 (N.D.Ill. 1990), the plaintiff alleged that, in plain view of others, the employer made an "unprecedented" surprise visit to his office, refused to allow him to speak to his staff, remained while he packed his personal belongings, refused to let him finish packing, interrogated coworkers about his expense account records, and escorted him out of the building. The court concluded that the plaintiff's complaint for defamation was not actionable per se— i.e., actionable without damages because the words were "obviously and naturally harmful" and thus no extrinsic proof was needed.

However, the court also concluded that plaintiff should be allowed to amend his complaint to allege defamation per quod—i.e. that extrinsic proof was needed. *Id.* at 1371–72.

Experts in defamation law have also recognized that a defamatory "statement" may consist of gestures or conduct. For example, Prosser notes that the distinctions between libel and slander are not entirely clear, citing cases involving "conduct carrying a defamatory imputation, such as hanging the plaintiff in effigy, erecting a gallows before his door, dishonoring his valid check * * * or even * * * following him over a considerable period in a conspicuous manner." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 112, at 786 (5th ed. 1984) (footnotes omitted). Professor Eldredge cites cases in which a "defendant, intending to charge the plaintiff with insolvency, holds up an empty purse and points to him." Laurence H. Eldredge, *The Law of Defamation,* § 12, at 79 (1978). As Professor Eldredge notes, "[t]he seen transitory gesture carries its message to the observer's brain via the sense of sight just as the spoken word conveys its message to the hearer's brain via the sense of hearing." *Id.*[2]

In the present situation, Bolton has presented sufficient evidence that Klein's actions conveyed a "statement" of the reasons for Bolton's discharge. The statement conveyed was that Bolton was dishonest and was not to be trusted to leave the building unaccompanied. The evidence of this "statement" by Klein is at least sufficient to survive respondents' summary judgment motion.

 We also conclude that, as a matter of law, Klein's actions were not entitled to a qualified privilege, because those actions were not "made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause." *Bauer,* 511 N.W.2d at 449. Bolton was not discharged for theft or accused of other dishonest behavior. Any fears that he might steal company property were not based upon fact. Under other circumstances it might have been appropriate to accompany an employee to the door. Under these circumstances, however, respondents' actions may have been unwarranted.

## VII. *Negligent Infliction of Emotional Distress*

 Bolton asserted a claim against respondents for negligent infliction of emotional distress. A plaintiff may recover under this theory upon proving that he was within a "zone of danger" of physical impact, that he reasonably feared for his safety, and that he consequently suffered severe emotional distress, with resultant physical injury. *Bohdan v. Alltool Mfg. Co.,* 411 N.W.2d 902, 907 (Minn.App.1987), *pet. for rev. denied* (Minn. Nov. 13, 1987). Bolton has not supported his claim that he was within a "zone of danger" in the halls of the treatment center when he was being discharged.

 The zone of danger requirement does not apply when plaintiff can show "a direct invasion of his rights," such as defamation. *Soucek v. Banham,* 503 N.W.2d 153, 163 (Minn.App.1993). Because we conclude that Bolton has sufficiently supported his underlying claim for defamation by action, we must determine whether Bolton raised genuine issues of material fact on the question whether he suffered severe emotional distress with resultant physical injury.

We conclude that Bolton has met this requirement for purposes of summary judgment. Bolton alleged in an affidavit that his physical and emotional health has deteriorated as a result of the discharge, his blood pressure has increased, his kidneys are functioning abnormally, and he suffers from incapacitating night terrors, anxiety attacks, and depression. Accordingly, on remand Bolton may proceed with his claim of negligent infliction of emotional distress.

## DECISION

The district court properly denied Bolton's motion to submit additional evidence and to extend the time for discovery. The district

---

**2.** We note also that the Restatement includes as libel written or printed words or "any other form of communication that has the potentially harmful qualities characteristic of written or printed words," and includes as slander "transitory gestures or * * * any form of communication other than [libel]." 3 Restatement (2d) of Torts § 568 (1977).

court did not err in granting summary judgment on the retaliatory discharge and Whistleblower Act claims. Respondents are entitled to official immunity. Bolton's discharge did not deprive him of a liberty or property interest. Respondents are entitled to a qualified privilege.

Bolton has stated claims for defamation by action and negligent infliction of emotional distress sufficient to survive respondents' motion for summary judgment.

**Affirmed in part, reversed in part and remanded.**