**William CARTER, III, Appellant,**

v.

**PEACE OFFICERS STANDARDS AND TRAINING BOARD, et al., Respondents.**

No. C2–95–2319.

Court of Appeals of Minnesota.

Jan. 14, 1997.

Stephen W. Cooper, Kathryn J. Cima, The Cooper Law Firm, Minneapolis, for Appellant.

Richard A. Beens, Lee A. Lastovich, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, for Respondents.

Considered and decided by LANSING, P.J., KLAPHAKE, J., and MULALLY, J.[*]

## OPINION

KLAPHAKE, Judge.

Appellant William Carter III brought this action against his former employer, respondent Minnesota Board of Peace Officer Standards and Training (Board), and respondent Richard Stanek, individually and in his official capacity as Board Chair. Carter alleged violation of the Minnesota Whistleblower Act, Minn.Stat. §§ 181.931–.935 (1992); unlawful "reprisals" and "aiding and abetting" in violation of the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–.15 (1992 & Supp.1993); infringement of free speech, due process, and equal protection in violation of 42 U.S.C. § 1983; tortious interference with contract; defamation; and noncompliance with the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1992).[1] After the parties had engaged in extensive discovery, the district court granted the Board and Stanek's motion for summary judgment on all claims.[2] Carter appealed.

On May 14, 1996, this court affirmed the grant of summary judgment to the Board on all of Carter's claims and reversed the grant of summary judgment to Stanek on the Whistleblower, tortious interference with contract, and defamation claims. *See Carter v. Peace Officers Standards & Training Bd.,* 547 N.W.2d 431 (Minn.App.1996). The supreme court granted Stanek's petition for further review and stayed all proceedings pending its final disposition in *Janklow v. Minnesota Bd. of Exam'rs for Nursing Home Adm'rs.* Following its release of *Janklow,* 552 N.W.2d 711 (Minn.1996), the supreme court remanded the case to this court "for consideration in light of" *Janklow.* We reinstated the appeal and requested supplemental memoranda from the parties. We now withdraw our original May 14, 1996, decision and substitute this new decision.[3]

Upon further consideration in light of *Janklow,* we conclude (1) official immunity is not appropriate to the facts of this case, and Stanek is not an employer subject to suit under the Whistleblower Act; (2) statutory immunity is not available to the Board as a defense to this Whistleblower action, and Carter has alleged facts sufficient to withstand summary judgment on this claim; (3) Carter has failed to allege sufficient facts to withstand summary judgment on his claim under the Human Rights Act; (4) the Board and Stanek in his official capacity are not amenable to suit under 42 U.S.C. § 1983;

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The district court granted the Board and Stanek summary judgment on the open meeting claim. On appeal, Carter does not address or brief this issue. We therefore deem it waived. *See Balder v. Haley,* 399 N.W.2d 77, 80 (Minn. 1987) (issues not argued in briefs "must be deemed waived" on appeal unless as the interests of justice may require).

2. While the district court also granted Carter's motion to amend his complaint to add a claim for punitive damages against Stanek, it indicated that its decision to grant leave to amend was mooted by its grant of summary judgment on Carter's other claims and its dismissal of his complaint. The Board and Stanek have not filed a notice of review challenging the district court's ruling on Carter's motion to amend. We therefore decline to address this ruling on appeal.

3. The Board and Stanek argue that because Carter did not appeal this court's May 14, 1996 decision to the supreme court, the only issues preserved for review are those that were raised by Stanek in his petition for further review. We disagree. Our original decision did not become final because the supreme court granted Stanek's petition and stayed the proceedings pending *Janklow.* *See* Minn.R.Civ.App.P. 117, subd. 1; *Hoyt Inv. Co. v. Bloomington Commerce & Trade Ctr. Assocs.,* 418 N.W.2d 173, 175–76 (Minn. 1988). Additionally, in remanding the case to this court for consideration in light of *Janklow,* the supreme court did not limit our scope of review to issues raised in Stanek's petition for further review. *See John Wright & Assocs. v. City of Red Wing,* 256 Minn. 101, 102, 97 N.W.2d 432, 434 (1959) (in case of remand without express directions, court may proceed in any manner not inconsistent with remanding opinion).

and (5) with respect to Carter's claims against Stanek for defamation and tortious interference with contract, Carter has established the existence of material issues of fact sufficient to withstand summary judgment. We therefore affirm in part, reverse in part, and remand.

### FACTS

The Board is a creature of legislative enactment and reports directly to both the governor and the legislature. It is charged with the responsibility of establishing policies and procedures applicable to law enforcement throughout the state. The governor selects the Board's chair and appoints fourteen of its fifteen members. Minn.Stat. §§ 626.841, .843 (1992). Stanek was appointed by the governor to serve as chair from 1991 to the fall of 1994.

Carter was hired by the Board to serve as its executive director from 1987 until his termination on September 1, 1993. In that capacity, Carter was an at-will employee who served "at the pleasure of the board" and performed "such duties, on behalf of the board, as the board * * * prescribe[d]." Minn.Stat. § 626.843, subd. 2. Carter reported to the Board and represented the Board at various functions. On behalf of the Board, Carter lobbied the legislature, served as spokesperson, and managed staff. His responsibilities included implementing Board policy and balancing the competing interests of the Board's constituencies, such as individual police officers, chiefs of police and sheriffs, state legislators, and law enforcement higher education facilities.

In June and July 1993, Carter received allegations of inappropriate conduct on the part of trainers during Board-approved training sessions.[4] One incident involved a St. Paul Police Department trainer who allegedly engaged in psychological intimidation of trainees. In response to a letter from Car-

ter, the Department informed Carter that it did not believe the Board had authority or jurisdiction to investigate this incident. The second incident involved a session presented by the Minnesota Police Chiefs' Association (Association) during which the keynote speaker allegedly told sexist, racist, and homophobic jokes. Carter notified the Association of the incident, and the Association made some changes to the written materials it provided at seminars.

During July 1993, Carter also was investigating complaints against several police chiefs who allegedly were not following a law regarding the use of force and deadly force.[5] One complaint involved Mankato Police Chief Glen Gabriel, who agreed that he was not in compliance with the law. Gabriel acknowledged that sometime in August 1993, Stanek telephoned him, told him not to worry about the investigation, and said he "would take care of it." Gabriel later speculated that Stanek was referring to the fact that Carter was going to be terminated.

Richfield Police Chief Jack Erskine was also the subject of a complaint and investigation. He and other police chiefs were openly hostile to these investigations. On August 24, 1993, Erskine organized a meeting of approximately 50 other police chiefs, apparently to discuss the investigations and complain about the Board's involvement in their internal affairs. Board staff were not allowed to attend this meeting.

The following day, Stanek and Board Vice Chair Thomas Steininger met with Carter and demanded that he resign or be terminated. Carter recalled that Stanek raised concerns about the police chiefs' meeting and about the Erskine investigation. Stanek later acknowledged that he asked for Carter's resignation in part because of Erskine and the other police chiefs' anger over the Board's investigations.

---

4. One of the Board's responsibilities is to certify training programs for police officers and trainers. Minn.Stat. § 626.843, subd. 1.

5. In 1991, the legislature enacted a statute requiring the head of every local and state law enforcement agency to adopt and enforce a written policy governing the use of force, including deadly force, and the use of firearms by police officers. 1991 Minn.Laws ch. 141, § 2; Minn. Stat. § 626.8452 (1992). The Board was given the authority to impose licensing sanctions and seek injunctive relief for failure to comply with this statute. Minn.Stat. § 626.8452, subd. 5.

On September 1, 1993, Stanek called an emergency Board meeting. Carter claims that Stanek misrepresented to Board members that Stanek had invited Carter to attend the meeting and that Carter had agreed to resign. Carter insists that he was never invited to attend the meeting, that Stanek suggested he be on vacation, and that he never agreed to resign. Stanek claims that Carter was aware of the date and time of the meeting, drew up the agenda, and chose not to attend the meeting.

After extensive discussion at the emergency meeting, the Board voted 13 to 1 to remove Carter from his position as executive director. Several Board members acknowledged that their decision was based in part on the police chiefs' recent meeting. Several Board members also interpreted Carter's absence from the Board meeting as an indication that he either agreed to resign or had no defense to Stanek's stated reasons for his termination. The Board's action gave Carter the option to "bump" into his previous position as "Standards Coordinator," but he elected to quit rather than return to his old position.

After Carter quit, Stanek made public statements that Carter had been fired for mismanagement. In a November 1993 newspaper article, Stanek was quoted as stating that Carter's firing was "based on performance and managerial problems."

Carter insists that he received only positive feedback on his work performance until Stanek asked for his resignation in August 1993. Both the Board and Stanek disagree with Carter's portrayal of his performance during his tenure as executive director. While they agree that Carter's technical skills were good and that he "worked hard," they insist that he was unable to establish the necessary level of credibility to work effectively with the Board's various constituencies. They further claim that Carter was perceived as being "too close" to the higher education constituency at the expense of law enforcement and that he tended to follow his own political agenda instead of acting in the Board's interests. Finally, they claim that Carter was unable to effectively manage internal Board responsibilities such as staffing and funding.

Carter was replaced by Ray Cummings, who had been the executive director of the Association. With respect to the investigations begun by Carter, the Board eventually found Erskine in violation of the law but took no action. The Board also found Gabriel in noncompliance with the law and gave him 30 days to change his department's policy.

## ISSUE

Did the district court err in granting the Board and Stanek summary judgment on all of Carter's claims?

## ANALYSIS

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. To survive a motion for summary judgment, the nonmoving party "may not rest upon the mere averments or denials of [its] pleadings but must present specific facts showing that there is a genuine issue for trial." Minn.R.Civ.P. 56.05. On appeal, this court must view the evidence in the light most favorable to the party against whom judgment was granted and must accept as true the factual allegations made by that party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

The district court determined that the Board and Stanek were entitled to statutory, official, and qualified immunity with respect to the decision to terminate Carter, an unclassified employee who served at the Board's pleasure. The court further determined that even if the Board and Stanek were not entitled to immunity, summary judgment was nevertheless appropriate because Carter failed to present prima facie cases on each of his claims.

### Whistleblower Act

Carter alleges that the Board and Stanek in his official capacity violated the Whistleblower Act, Minn.Stat. § 181.932. In *Janklow*, 552 N.W.2d at 716, the supreme court emphasized that official immunity applies only in situations involving the act of an

individual state official. The court reasoned that because the board in *Janklow* was statutorily authorized to hire and fire its executive director "only acting in its joint capacity * * * no individual 'official' is responsible for the acts that [Janklow] claims were in violation of the Whistleblower Act." *Id.* Thus, the court concluded that official immunity did not apply to the facts of that case. *Id.*

■ Similarly, official immunity does not apply here. Carter was an at-will employee who served "at the pleasure of the board" and performed "such duties, on behalf of the board, as the board * * * prescribe[d]." Minn.Stat. § 626.843, subd. 2 (1992). Thus, Carter could only be fired by the Board acting in its joint capacity, and no individual Board member was responsible for the acts that Carter claims were in violation of the Whistleblower Act.[6]

■ *Janklow* further held that the Whistleblower Act operates as an "implied waiver" of statutory immunity and that statutory immunity thus is not available to a state regulatory board as a defense to a Whistleblower action. 552 N.W.2d at 718. Similarly, we conclude that statutory immunity is not available to the Board as a defense to Carter's Whistleblower claim.

■ We must still consider whether Carter has alleged facts sufficient to withstand summary judgment on this claim. Carter alleged that he reported law violations to the Board and that, at the Board's direction, he participated in investigations or raised concerns of deadly force policy violations by police chiefs. *See* Minn.Stat. § 181.932, subd. 1(a), (b) (act prohibits adverse employment actions against employee because employee reports law violation or because employee "is requested by a public body or office to participate in an investigation, hearing or inquiry"). Carter further provided sufficient evidence to raise a fact issue on the causal connection between his termination and his investigations or reports of illegal activity; that evidence included: admissions by a number of Board members that Carter's

termination was based in part on the anger of the police chiefs and Erskine towards Carter; Stanek's and Steininger's request that Carter resign one day after the police chiefs met to discuss Carter's investigations; the Board's replacement of Carter with the executive director of the Association; and the Board's subsequent findings that Erskine and Gabriel had violated the law. Carter thus established a prima facie case of retaliation by showing that his discharge was motivated by an impermissible reason. *See McGrath v. TCF Bank Sav.,* 502 N.W.2d 801, 806–07 (Minn.App.1993), *aff'd as modified,* 509 N.W.2d 365 (Minn.1993). While the Board offers nonretaliatory reasons for Carter's termination, including Carter's poor management skills and unresponsiveness to the Board, these reasons merely establish the possibility of a mixed-motive for Carter's termination. *See id.* (citing *Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 624 (Minn.1988)). At trial, Carter must convince the trier of fact that his investigations and reports of illegal activities formed a discernible and causative factor for his termination and that the Board's claimed reasons were pretextual. *See id.* at 807. We therefore reverse the grant of summary judgment to the Board on this claim and remand it for trial.

### Human Rights Act

■ Carter alleges a "reprisal" claim against the Board and an "aiding and abetting" claim against Stanek under the Minnesota Human Rights Act. *See* Minn.Stat. § 363.03, subd. 7 (elements of reprisal claim are protected conduct, adverse employment action, and causal connection). In *Janklow,* 552 N.W.2d at 717–18, the supreme court discussed its decision in *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567 (Minn. 1994), in which it had held that official immunity was not impliedly waived by the Human Rights Act. *Id.* at 571. However, we need not determine whether official or statutory immunity is available here; rather, we con-

---

**6.** We further conclude that because Stanek is not responsible for terminating Carter, he is not an "employer" subject to individual suit under the Whistleblower Act. *See* Minn.Stat. § 181.932,

subd. 1(a)-(c) (1992) (Act prohibits "employer" from discharging, disciplining, or discriminating against employee who in good faith reports or investigates violations of law).

clude that summary judgment was properly granted because Carter failed to present sufficient facts to establish that the Board's decision to terminate him was made in reprisal for conduct protected by the Human Rights Act. Carter claims that the protected conduct [7] involved complaints he made about discrimination and harassment during training sessions, and that causation is shown by the proximity in time between the complaints and his termination. Carter's "complaints," however, are more accurately characterized as "issues" or "concerns" about incidents during Board-approved training. Carter raised these concerns in letters to the St. Paul Police Department and the Association. Carter did not oppose a "practice forbidden under [the Human Rights Act]," or otherwise file a charge, testify, assist, or participate in an investigation, proceeding, or hearing under the Act. See Minn.Stat. § 363.03, subd. 7. Nor has Carter shown any causation between his termination by the Board and the issues he raised about possible discrimination or harassment by trainers. As such, we conclude that summary judgment was properly granted on Carter's Human Rights Act claim.

### 42 U.S.C. § 1983

■ Carter seeks judgment on this claim against the Board and not against Stanek individually. Because neither a state nor its employees acting in their official capacity may be sued under 42 U.S.C. § 1983, we affirm the grant of summary judgment on this claim. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); Stone v. Badgerow, 511 N.W.2d 747, 751 n. 3 (Minn.App. 1994), review denied (Minn. Apr. 19, 1994) (section 1983 action may not be maintained against state and its employees in their official capacity).

### Tortious Interference with Contract

Carter alleges that Stanek tortiously interfered with Carter's employment contract and relationship with the Board. This claim is based in part on Stanek's alleged "misrepresentations" to the Board during its September 1 meeting. Some of the Board members relied upon these statements to support their decision to terminate Carter.

■ Stanek is not entitled to official immunity for making these statements, because fact issues exist as to whether he knew or should have known that his conduct was prohibited. See Rico v. State, 472 N.W.2d 100, 107–08 (Minn.1991) (official immunity available to public official even though he intentionally commits act that court or jury subsequently determines is a wrong, unless official knew or had reason to know act was prohibited). In addition, Carter's allegations raise material issues of fact as to whether Stanek interfered with his contractual relationship and whether Stanek was acting in bad faith or motivated by "personal ill-will, spite, hostility, or a deliberate intent to harm" Carter. See Nordling v. Northern States Power Co., 478 N.W.2d 498, 505–07 (Minn.1991) (tortious interference claim will lie for at-will employment agreement when corporate officer acts outside of corporate duties). We therefore reverse the district court's grant of summary judgment on this claim.

### Defamation

■ Carter alleges that Stanek's public statements that Carter was fired for "performance and managerial problems" constituted defamation. Carter claims he was discharged not for poor management, but for investigating and pursuing complaints against police chiefs. Defamatory statements may include statements that are arguably true, but made under circumstances to mislead and confuse the listener and place the target in a false and negative light. See Phipps v. Clark Oil & Refining Corp., 408 N.W.2d 569, 573 (Minn.1987).

7. Carter also claims that he engaged in protected conduct with respect to the position he took on the recruitment of minorities and women in law enforcement. There is no evidence that he opposed a practice forbidden by the Human Rights Act or otherwise participated in a proceeding under the Act with respect to his position on the recruitment of minorities and women. Nor is there any evidence of a causal connection between his position on this issue and his termination.

A public official is not immune from a defamation claim when the alleged defamatory statements are made within the context of an administrative personnel matter. *Bauer v. State,* 511 N.W.2d 447, 450 (Minn.1994). While high level, executive government officials are entitled to an absolute privilege, Board Chair Stanek does not fall within this category. *See Johnson v. Dirkswager,* 315 N.W.2d 215, 220 (Minn. 1982) (describing positions entitled to absolute immunity). Stanek may still be entitled to a qualified privilege if he can show that his statements were made on a proper occasion, from a proper motive, and based on reasonable or probable cause. *See Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 256–57 (Minn.1980). Because a fact issue exists as to whether Stanek was motivated by actual malice when he made the statements, however, he is not entitled to qualified immunity on this summary judgment motion. *See Bauer,* 511 N.W.2d at 449–450 (actual malice defeats qualified privilege and is "generally" fact issue for jury).

## DECISION

The district court's grant of summary judgment is affirmed with respect to Carter's claims of violation of the Human Rights Act and 42 U.S.C. § 1983. The grant of summary judgment to the Board ·on Carter's Whistleblower claim and the grant of summary judgment to Stanek on Carter's defamation and tortious interference with contract claims are reversed and remanded for trial.

**Affirmed in part, reversed in part, and remanded.**