The FREE PRESS, published
by Newspaper Holdings,
Inc., Respondent,

v.

COUNTY OF BLUE EARTH,
Appellant.

No. A03–1152.

Court of Appeals of Minnesota.

April 13, 2004.

Mark R. Anfinson, Minneapolis, MN, for respondent.

Ann R. Goering, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

Blue Earth County appeals the district court's summary judgment declaring that the county violated Minn.Stat. § 13D.01, subd. 3 (2000), a provision of the Minnesota Open Meeting Law, by failing to describe the "subject to be discussed" at a closed meeting. The county also challenges the accompanying injunction, which restrains the county from closing any meeting without a public statement on the record indicating both the specific grounds permitting the closing of the meeting and a description of the subject to be discussed. We conclude that the district court did not err in determining that the county failed adequately to describe the subject to be discussed in the closed meeting. The injunction enforcing the open meeting law, however, lacks sufficient specificity to identify the restrained conduct, and we remand for reformulation of the injunction.

## FACTS

The Blue Earth County Board of Commissioners held a meeting in April 2002 to discuss, among other matters, an Equal Employment Opportunity Commission (EEOC) charge filed by a county employee. A reporter from the Mankato Free Press was present at the meeting. During the meeting, the county board chair read a statement explaining that the county could close a meeting under Minn.Stat. § 13D.05, subd. 3(b) (2000), for discussion permitted by the attorney-client privilege; he then entertained a motion to close the meeting. The board minutes reflect that the meeting was closed "under the attorney-client privilege to discuss pending litigation." About two weeks later, the county terminated the employment of its land-records director.

The Free Press reporter asked attorneys representing the county about the litigation. The Minnesota Counties Insurance Trust attorney who was assigned to defend the county against the EEOC charge stated that a charge had been filed with an administrative agency but that no lawsuit had been filed. The Blue Earth County Attorney told the reporter that a lawsuit "had already been filed" and that it involved "an employee matter." The insurance trust attorney confirmed that an administrative charge was pending and further stated that an administrative charge was considered a "pending civil legal action" under the Minnesota Government Data Practices Act (MGDPA). When asked by the reporter to identify the complainant, the insurance trust attorney declined to provide that information.

After further inquiry by the attorney from the Free Press, the insurance trust attorney responded that an EEOC charge had been made in 2002 against Blue Earth County, but declined to specify the exact nature of the charge to avoid impermissibly identifying the employee or former employee who had brought the charge. The Free Press's attorney made a written request under the MGDPA to inspect all documents received by Blue Earth County from the EEOC after January 1, 2002. He agreed that redactions would be appropriate to protect the identity of the complainant but disagreed that specifying the legal basis for the charge would divulge the complainant's identity. He also requested all documents obtained by the county relating to the "pending litigation," a statement of the specific reasons for terminating the land-records director, and all data documenting the basis for that action.

The insurance trust attorney provided a redacted copy of the EEOC charge but asserted that the legal basis of the charge was not public information. She indicated that documents obtained by the county relating to the pending litigation were classified as confidential civil-investigative data under the MGDPA, and that the closed meeting related to the EEOC charge. She also stated that the former land-records director, an at-will employee, had not been subject to disciplinary action and that not every termination was disciplinary in nature.

The Free Press filed a complaint in district court asserting violations of the MGDPA and the Minnesota Open Meeting Law. The Free Press alleged that the county had violated the MGDPA by failing to respond promptly to requests for information, failing to allow the Free Press to review EEOC documents relating to pending litigation, and failing to provide specific reasons for the employee's termination. The complaint also asserted that the county had violated the open meeting law by failing to identify the parties involved in the pending litigation. The Free Press requested declaratory relief, an injunction, a civil penalty, costs, disbursements, and attorneys' fees.

Both the county and the Free Press moved for summary judgment. The district court issued a partial summary judgment: (a) granting summary judgment for the county on the Free Press's claim that the county failed to follow proper procedures in responding to the Free Press's requests for information under the MGDPA; (b) granting summary judgment for the Free Press on its claim for information in the EEOC charge, except for information specifically identifying the EEOC claimant; (c) granting summary judgment for the Free Press on its claim that the county's failure to describe the subject to be discussed at the closed meeting violated Minn.Stat. § 13D.01, subd. 3; (d) declining to grant summary judgment on the Free Press's requests for documents relating to the "pending litigation," the Free Press's request for information on the employment termination of the land-records director, and the Free Press's request for statutory penalties and attorneys' fees, and injunctive relief.

On the county's renewed motion for summary judgment, reconsideration, and clarification, the district court confirmed summary judgment for disclosure to the Free Press of non-identifying information in the EEOC complaint. After reviewing the record as supplemented by the parties, the district court concluded as a matter of law that the land-records director's termination was disciplinary, and, thus, the Free Press was entitled to information relating to the termination. The district court rejected the county's newly raised argument that the Free Press lacked standing to pursue its open-meeting-law claim, concluding that the Free Press was an entity in the best position to sue to compel the county to comply with the directives of the law.

In the same order, the court enjoined the county from closing any future meeting under the open meeting law "absent a statement made publicly and on the record which shall indicate both the specific grounds permitting the closing of the meeting and which shall contain a description of the subject that will be discussed, as required by Minn.Stat. § 13D.01, subd. 3." But the court declined to read a requirement into Minn.Stat. § 13D.01, subd. 3, that disclosure of the "subject to be discussed" required identifying the persons or entities involved. The court also declined to provide more specific standards for what would be required under the statute, stating the issue as only

whether the statement actually provided by the county described the "subject to be discussed," and finding that it did not.

The court concluded that the determination of remedies under the MGDPA would require trial and that the Free Press was entitled to seek injunctive relief under the open meeting law. The court rejected the request for costs and attorneys' fees under the open meeting law, reasoning that they were only available against individual commissioners, not against the county, the sole named defendant. The county and the Free Press stipulated to submitting the case on affidavits and briefs, and the district court issued its findings of fact, conclusions of law, order for judgment, and memorandum, reiterating its previous conclusions and allowing $10,000 to the Free Press for attorneys' fees, costs, and disbursements on the MGDPA claims.

The county appeals that part of the judgment that decided the open-meeting-law claims.

## ISSUES

I. Does a statement that a meeting is being closed for discussion of pending litigation under the attorney-client privilege satisfy the requirement in Minn.Stat. § 13D.01, subd. 3 (2002), that a public body must describe the "subject to be discussed" before closing a meeting?

II. Is the injunction sufficiently specific to provide a reasonable degree of certainty on what is being restrained?

## ANALYSIS

### I

■ The interpretation of a statute and its application to undisputed facts raises questions of law that we review de novo. *Wiegel v. City of St. Paul,* 639 N.W.2d 378, 381 (Minn.2002). The county challenges the district court's grant of summary judgment determining that the county improperly closed the board meeting without describing the "subject to be discussed" as required by the Minnesota Open Meeting Law.

Minn.Stat. § 13D.01, subd. 3 (2002), states: "Before closing a meeting, a public body shall state on the record the specific grounds permitting the meeting to be closed and describe the subject to be discussed." Another section of the open meeting law, Minn.Stat. § 13D.05, subd. 3(b) (2002), provides that "[m]eetings may be closed if the closure is expressly authorized by statute or permitted by the attorney-client privilege."

The county contends that invoking Minn.Stat. § 13D.05, by itself, provides the specific grounds for the meeting to be closed under Minn.Stat. § 13D.01, subd. 3, and that its assertion of attorney-client privilege under that statute satisfies the requirement of the "subject to be discussed." The Free Press, however, argues that such a general reading of the statute would be meaningless and contrary to legislative intent.

Resolution of this issue requires us to apply provisions of the open meeting law. To determine the meaning of a statute, we focus first on the language of the statute itself. *See* Minn.Stat. § 645.16 (2002) (setting forth plain-meaning rule). If the language of a statute is plain, that meaning is applied as a manifestation of legislative intent. *Kersten v. Minn. Mut. Life Ins. Co.,* 608 N.W.2d 869, 874–75 (Minn.2000). "Plain meaning presupposes the ordinary usage of words that are not technically used or statutorily defined, relies on accepted punctuation and syntax, and draws from the full-act context of the statutory provision." *Occhino v. Grover,* 640 N.W.2d 357, 359 (Minn.App.2002) (citations

omitted), *review denied* (Minn. May 28, 2002). Sections of a statute should be considered together to give the words their plain meaning. *Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 339 (Minn.1984); *see also* Minn.Stat. § 645.17 (2002) (statute must be considered as a whole to harmonize and give effect to all provisions); *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) ("[T]he meaning of statutory language, plain or not, depends on context.").

In this case, our examination of the terms used in section 13D.01, subdivision 3 leads us to the plain meaning of the language in question. "Grounds," as defined by Black's Law Dictionary, are "[t]he reason[s] or point[s] that something (as a legal claim or argument) relies on for validity." Black's Law Dictionary at 710 (7th ed.1999). "Subject," on the other hand, refers to "[t]he matter of concern over which something is created." *Id.* at 1438. Contrary to the county's argument, "attorney-client privilege," as recited in section 13D.05, subdivision 3(b), does not suffice as the "subject to be discussed" required by section 13D.01, subdivision 3; clearly, the county's assertion of that privilege was the "grounds" for closing the meeting. And the assertion of that privilege alone is legally insufficient to meet the statutory requirement of section 13D.01, subdivision 3. The county also maintains that it further defined the subject to be discussed as "pending litigation." We recognize that by providing this information the county *identified* the subject to be discussed, but section 13D.01, subdivision 3 requires a public body to "*describe* the subject to be discussed." (Emphasis added.) Again, the county's actions failed to satisfy the statutory requirement, because they lacked a particularized statement describing the subject to be discussed.

The plain meaning of the requirement that the public body "describe the subject to be discussed" is consistent with case law construing the related open-meeting-law provision, Minn.Stat. § 13D.05, subd. 3, which allows a meeting to be closed when authorized by the attorney-client privilege. *See Prior Lake Am. v. Mader,* 642 N.W.2d 729, 740 (Minn.2002) (allowing closure "when a public body seeks legal advice concerning litigation strategy"); *see also Minneapolis Star & Tribune Co. v. Hous. & Redev. Auth.,* 310 Minn. 313, 324, 251 N.W.2d 620, 626 (1976) (concluding that attorney-client privilege exception to open meeting law applied when affidavit showed that closed meetings were necessary to protect litigation strategy and discuss settlement proposals in case pending in United States District Court); *Channel 10 v. Indep. Sch. Dist. No. 709,* 298 Minn. 306, 323, 215 N.W.2d 814, 826 (1974) (declining to adopt blanket exception to open meeting law for attorney-client privilege).

In *Prior Lake Am.,* 642 N.W.2d at 739, the supreme court concluded that the attorney-client-privilege exception applied when the balance of purposes served by the attorney-client privilege weighed against those served by the open meeting law and dictated the need for absolute confidentiality. This narrow formulation of the attorney-client privilege reflects the public policy behind the open meeting law. As the *Prior Lake* court noted, the scope of the attorney-client privilege is narrower for public bodies than for private clients: "Open-meeting and open-files statutes reflect a public policy against secrecy in governmental activity. Moreover, unlike persons in private life, a public agency or employee has no autonomous right of confidentiality in communications relating to governmental business." *Id.* at 737 (citing Restatement (Third) of the Law Governing Lawyers, § 74 cmt. b (1998)).

In order for the narrow construction of attorney-client privilege under Minn.Stat. § 13D.05, subd. 3(b), to be effective, the parallel open meeting law provision, Minn. Stat. § 13D.01, subd. 3, requires a particularized statement describing the "subject to be discussed" when closing a meeting on the ground of attorney-client privilege. Thus, requiring a particularized statement describing the subject to be discussed harmonizes with the *Prior Lake* analysis and gives effect to all the provisions of the open meeting law. *See* Minn.Stat. §§ 645.16 (mandating that "[e]very law shall be construed, if possible, to give effect to all its provisions"); .17(2) (2002) (mandating that courts presume that legislature intended to give effect to every provision of statute).

Narrow construction of exceptions to the open meeting law advances the legislative purpose to support broad public access to the decisions of public bodies. *See St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Schools*, 332 N.W.2d 1, 6 (Minn.1983) (declaring that the open meeting law "will be liberally construed in order to protect the public's right to full access to the decision-making process of public bodies ..."). Thus, we conclude that the district court did not err in determining that the county failed adequately to describe the "subject to be discussed" in closing the board meeting on the ground of attorney-client privilege to discuss pending litigation.

## II

■ The county challenges the Free Press's standing to bring this action and disputes its own status as a proper party defendant. A party acquires standing either by suffering an injury-in-fact or as the beneficiary of express statutory authority granting standing. *In re Petition for Improvement of County Ditch No. 86*, 625 N.W.2d 813, 817 (Minn.2001). In

*Channel 10*, 298 Minn. at 313, 215 N.W.2d at 821, the Minnesota Supreme Court broadly construed the requirements of standing under the open meeting law, reasoning that the law was "designed to assure the public's right to be informed" by the media and does not require allegations of specific injury or interests different from those of the general public. Although the county asserts that the Free Press relinquished its standing as a member of the public by failing to pass along the limited information it received about the EEOC charge, that argument is unpersuasive in light of the county's refusal to divulge the legal basis for the charge, an essential piece of information sought under the statute. Accordingly, we conclude that the Free Press had standing to request relief from the district court.

■ Similarly, the county's argument that it was not a proper party defendant under the open meeting law must fail. As the county points out, the open meeting law ascribes potential liability for civil penalties, costs, disbursements, and attorneys' fees to public officials, rather than the public body that they represent. Minn. Stat. § 13D.06 (2002). But the law does not prohibit the remedy of injunctive relief, and Minnesota courts have construed the open meeting law to permit a district court to issue an injunction against a public authority. *See Channel 10*, 298 Minn. at 317–18, 215 N.W.2d at 823 (upholding injunctive relief ordered against school board, noting that public body that closed meetings in violation of open meeting law may be enjoined without statutory enabling provision); *see also* Minn.Stat. § 645.17(4) (2002) (noting that when court of last resort has construed statutory language, legislature in subsequent laws on same subject matter is deemed to intend same construction of statute). Therefore, the district court was not precluded from

ordering injunctive relief against Blue Earth County.

## III

The county maintains that the district court's injunction lacked sufficient specificity to identify the conduct that is restrained. We agree. While the decision whether to grant injunctive relief rests within the discretion of the district court, *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 92 (Minn.1979), injunctions ordered under the open meeting law must serve the "policy and purposes expressed by the legislature," and "fundamental fairness, if not due process, requires that [an] injunction be so tailored that the defendant knows with some reasonable degree of certainty what it is restrained from doing." *Channel 10*, 298 Minn. at 317, 325–26, 215 N.W.2d at 823, 827–28.

In its summary judgment memorandum, the district court "decline[d] to endorse [whether] a statement by the [c]ounty [b]oard that it was going to discuss 'a complaint filed with an administrative agency by an unnamed former employee,' or a statement of similar import, would have been sufficient." The district court simply enjoined the county from closing a meeting absent a public statement indicating both the specific grounds for closing the meeting and a description of the subject to be discussed. This recitation of statutory language does not serve to notify the county with reasonable specificity exactly what conduct is restrained, or conversely, the exact nature of the language that would satisfy the statutory requirement. Therefore we remand this issue to the district court for more precise direction to inform the county what specific information is required to satisfy the requirement that it describe the "subject to be discussed" under section 13D.01, subdivision 3.

In so doing, we recognize the importance of balancing the public's interest in free and open public meetings with the current or former employee's privacy interest. As the district court noted in its summary judgment memorandum, members of the public retain an obvious interest in knowing what litigation is pending against their county and the basis for that information. On the other hand, the open meeting law recognizes specific privacy protections for data on individuals. *See, e.g.*, Minn.Stat. § 13D.05, subd. 2 (2002) (stating that meeting "must be closed" for discussion of certain nonpublic data, including active criminal investigative data and certain educational health, medical, welfare, and mental health data).

The district court in this case determined in its summary judgment that the non-identifying information contained in the EEOC charge was not private personnel data under Minn.Stat. § 13.43 (2000). This determination has not been appealed. Similarly, although federal regulations prohibit the Equal Employment Opportunity Commission from making public a charge asserted under relevant law before a lawsuit is commenced, this prohibition does not apply to "the publication of data derived from such information in a form which does not reveal the identity of charging parties, respondents, or persons supplying the information." 29 C.F.R. § 1601.22 (2003). Because neither state nor federal law prevents disclosure of non-identifying information in the EEOC charge, the district court correctly determined that the public had a right to the information contained in the charge, including its legal basis, as redacted to preserve the complainant's identity. Because of state and federal law providing for confidentiality and privacy, describing the "subject to be discussed" will not always permit disclosure of the current or former

employee's identity. The primary matter of public concern remains the nature and substance of the legal charges leveled against the county. If the district court determines that making public the legal basis for a charge effectively identifies the complainant in circumstances in which the complainant's identity is protected by law, the district court must use its discretion to fashion an equitable, particularized injunction.

## DECISION

Because Minn.Stat. § 13D.01, subd. 3 (2002), requires a particularized statement describing the subject to be discussed before a public body closes a meeting, we affirm the district court's determination that the county failed to comply with the statute when it stated only that the meeting was closed "under the attorney-client privilege to discuss pending litigation." We remand, however, to the district court for a modified injunctive order that will describe the restrained conduct with sufficient specificity to allow the county to comply with the prescribed statutory terms.

**Affirmed as modified; remanded.**