**BRAINERD DAILY DISPATCH, a division of Morris Communications Company, LLC, Appellant,**

v.

**Jim DEHEN, et al., Respondents.**

**No. A04–909.**

Court of Appeals of Minnesota.

March 22, 2005.

Mark R. Anfinson, Lake Calhoun Professional Building, Minneapolis, MN, for appellant.

George C. Hoff, Justin L. Templin, Kimberly B. Kozar, Hoff, Barry & Kuderer, P.A., Eden Prairie, MN, for respondents.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for amicus curiae League of Minnesota Cities.

Considered and decided by HUDSON, Presiding Judge; MINGE, Judge; and CRIPPEN, Judge.*

## OPINION

HUDSON, Judge.

In 2003, the Brainerd City Council met in closed session pursuant to the attorney-client-privilege exception to the open-meeting law, Minn.Stat. § 13D.05, subd. 3(b) (2002), for a confidential consultation with legal counsel appointed by its insurer concerning a threatened legal action. The Brainerd Daily Dispatch sued for violation of the open-meeting law, and the district court granted summary judgment in favor of the city. Because the district court correctly held that the attorney-client-privilege exception applies, we affirm.

## FACTS

The City of Brainerd holds an annual Fourth of July celebration that includes a parade. Brainerd Community Action (BCA), a private community-development organization that receives substantial sums from the city through a tax levy, administers the parade. In 2003, the BCA received a permit to organize the parade. The Brainerd Area Coalition for Peace

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

(peace coalition) applied for permission to march in the parade, but BCA denied the request based on safety concerns.

On July 1, 2003, the city attorney contacted the city's insurer, the League of Minnesota Cities Insurance Trust, for advice as to whether the city would be covered if the peace coalition sued. The peace coalition then sent a July 2, 2003 letter to the city and BCA, claiming that the denial of permission to march in the parade violated its rights and informing them that if the decision was not reversed, the peace coalition would seriously consider legal action against them. According to a news report in the Brainerd Daily Dispatch on July 7, 2003, the peace coalition was considering legal action against the city and BCA and had been contacted by the Minnesota Civil Liberties Union (MCLU) concerning the case. BCA did not reverse its decision, and the peace coalition did not march in the parade.

According to a July 9, 2003 report in the Dispatch, the peace coalition accepted an offer from the MCLU to research the issue of whether a First Amendment violation occurred, although at that time the peace coalition had not decided whether to pursue legal action. In a letter dated July 10, 2003, the MCLU made a data-practices request to the city for documents relating to city ordinances, past parade permits, and other data. According to another report in the Dispatch on July 23, an MCLU panel recommended that the MCLU represent the peace coalition in a possible legal action against the city and BCA.

The city's insurer retained an attorney as special counsel to represent the city in the dispute. He appeared at an open session of the Brainerd City Council on July 25, 2003. He first explained that he rec-ommended that the council meet with him in closed session so that he could consult with its members in a private, confidential setting. He discussed *Prior Lake American v. Mader*, 642 N.W.2d 729 (Minn. 2002), in which an open-meeting violation was found. He distinguished the case, explaining that he was not going to discuss a matter pending before the city council in the closed session, but instead would discuss the development of a defense strategy or reconciliation to address a threatened lawsuit that appeared imminent. He explained that addressing these issues in open session would have a significant negative impact on the city's ability to protect its rights. He assured the council and members of the public that the discussion would be limited to litigation strategy and that no other public business would be addressed.

The city council announced that it was going into closed session to discuss the matter with its attorney. A representative of the Dispatch objected, but the closed session was nonetheless held. The Dispatch sued the individual council members who attended the closed session, Jim Dehen, Anne Nelson Fisher, Mary Koep, Lucy Nesheim, and Gary Scheeler, and the city, claiming that the closed session violated the open-meeting law.[1] The district court granted summary judgment in favor of the council members and the city, and this appeal followed.

## ISSUE

Did the district court err in determining that the city properly invoked the attorney-client-privilege exception to the open-meeting law, Minn.Stat. § 13D.05, subd. 3 (2002)?

---

1. According to the complaint, council member Bob Olson declined to attend the closed meeting due to concerns it was not permitted by the open-meeting law. Council member Kelly Bevans and Mayor James Wallin also were not present.

## ANALYSIS

■ In reviewing an appeal from summary judgment where no facts are in dispute, the appellate court will review the decision to determine whether the district court erred as a matter of law. *Prior Lake American v. Mader*, 642 N.W.2d 729, 735 (Minn.2002).

Under the open-meeting law, meetings "of the governing body of a . . . statutory or home rule charter city" must be open to the public. Minn.Stat. § 13D.01, subd. 1(b)(4) (2002). The Minnesota Supreme Court recognized that the invocation of the attorney-client privilege may, in the proper circumstances, constitute an exception to the open-meeting law. *Minneapolis Star & Tribune Co. v. Hous. & Redev. Auth.*, 310 Minn. 313, 323, 251 N.W.2d 620, 625 (1976) (*HRA*). In addition, almost 14 years after *HRA*, the legislature enacted a statutory provision recognizing the attorney-client privilege as an exception to the open-meeting law. Minn.Stat. § 13D.05, subd. 3(b) (2002); *Prior Lake*, 642 N.W.2d at 737. The supreme court then held that the interpretation of the statutory exception should be consistent with the law as set out in *HRA*. *Prior Lake*, 642 N.W.2d at 737.

■ In analyzing the issue, the supreme court in *Prior Lake* first rejected the argument that there should be a per se exception to the open-meeting law when there is threatened or pending litigation. *Id.* at 738. The court explained that there is no bright-line rule in the area but instead the exception must be addressed on "a case-by-case determination." *Id.* Second, a balancing test must be employed to analyze whether the exception applies. *Id.* Third, the exception will be invoked "cau-

tiously and seldom in situations other than in relation to threatened or pending litigation." *Id.* (quoting *HRA*, 310 Minn. at 324, 251 N.W.2d at 626). Finally, the fact of threatened litigation in itself does not show the need for absolute confidentiality; instead, the "overriding message" in *HRA* was that "[t]he need for absolute confidentiality is the justification for closing an otherwise open meeting." *Id.*

Applying *Prior Lake*, the district court here weighed the purposes of the attorney-client privilege against the purposes of the open-meeting law and determined that the need to have absolutely confidential discussions with specially appointed counsel to discuss strategies to defend against potential legal claims prevailed. We agree.

### A. Applicability of *Prior Lake*

■ The Dispatch argues that for the attorney-client exception to be workable and to avoid the exception from swallowing the rule, courts should not employ a balancing test to resolve whether a meeting should be closed. Rather, the Dispatch argues for what it calls a "categorical" approach, which in our view, is effectively a bright-line rule. Under such an approach, the attorney-client privilege would only extend—with rare exception—to cases that involve active litigation. The Dispatch also contends that use of a case-by-case analysis would produce chaos and provide little guidance to the practicing bar or trial courts.[2] Further, the Dispatch argues that public officials would escape any effective review of their use of the exception because case-by-case litigation is usually financially prohibitive. Although these concerns are not without merit, we are bound to follow Minnesota Supreme

---

**2.** The Dispatch acknowledges that *Prior Lake* refers to a case-by-case approach and calls for a balancing of the competing policies; but contends that the court, in fact, adopted the

"categorical" bright-line approach that the Dispatch advocates here. Based on the plain language in *Prior Lake*, we find no merit in this position.

Court precedent. *Jendro v. Honeywell, Inc.*, 392 N.W.2d 688, 691 n. 1 (Minn.App. 1986), *review denied* (Minn. Nov. 19, 1986). Accordingly, like the district court, we apply the *Prior Lake* balancing test, which requires us to "balance the purposes served by the attorney-client privilege against those served by the Open Meeting Law. The exception applies when this balancing dictates the need for absolute confidentiality." *Prior Lake*, 642 N.W.2d at 731.

## B. Attorney-client privilege

We now turn to the application of the attorney-client privilege. The privilege exists "to encourage the client to confide openly and fully in his attorney without fear that the communications will be divulged and to enable the attorney to act more effectively on behalf of his client." *Prior Lake*, 642 N.W.2d at 738–39 (quotations omitted). But "the privilege is narrower in the context of the Open Meeting law." *Id.* at 739. Thus, "[t]he attorney-client exception ... would almost never extend to the mere request for general legal advice or opinion by a public body in its capacity as a public agency." *HRA*, 310 Minn. at 323–24, 251 N.W.2d at 626. Instead, it "is to be employed or invoked cautiously and seldom in situations *other than in relation to threatened or pending litigation.*" *Id.* at 324, 251 N.W.2d at 626 (emphasis added).

Nevertheless, the Dispatch argues that the exception should be confined to instances in which litigation has actually commenced and not to situations such as this where litigation is merely threatened. Otherwise, it argues, the privilege will have virtually no boundaries because cities are routinely threatened with legal action, some meritorious, some not. In turn, it contends, the myriad threats of litigation will enable numerous meetings to be closed, thus undermining the court's admonition that the attorney-client privilege be strictly construed. *Prior Lake*, 642 N.W.2d at 736. There is merit to this argument, but we are bound by the clear and explicit language of the supreme court, which allows consideration of the exception in cases of threatened as well as actual litigation. *Id.* It is for the legislature or the supreme court to apply the limits the Dispatch urges.

The Dispatch also argues that the evidence does not show that litigation was in fact likely. But the Dispatch's contention is belied by the undisputed evidence to the contrary. First, after the decision to deny the peace coalition the opportunity to participate in the parade, the peace coalition sent a letter on July 2, 2003, to the city and BCA stating that it was "seriously considering legal action" against both if the decision was not reversed. The decision was not reversed. As reported by the Dispatch on July 7, 2003, the peace coalition stated it was "considering legal action" against the city and BCA, pending a response from the city and consultation with legal counsel. Further, it was reported that the MCLU had expressed interest in the case to the peace coalition's legal counsel. Next, as reported on July 9, 2003, by the Dispatch, the peace coalition accepted the offer from the MCLU to assist with the case but had not decided whether to pursue legal action. In a letter dated July 10, 2003, the MCLU made a data-practices request to the city for documents relating to the city's ordinances, past parade permits, and other data. As reported in the Dispatch on July 23, 2003, an MCLU panel recommended that the MCLU represent the peace coalition in possible legal action against the city and BCA. On this record, we conclude that these were not vague, idle statements thrown in the wind. To the contrary, it is

clear from both the statements and conduct of the peace coalition that litigation was seriously threatened and indeed appeared imminent.

■ In considering the applicability of the exception for the attorney-client privilege, another factor is whether the "private meeting would contribute to litigation strategy." *Id.* at 740. The Dispatch argues that this factor does little to contain the boundaries of the attorney-client exception because the term "litigation strategy" is so generic that a city will almost always be able to claim that it was meeting to discuss litigation strategy whenever a public body is threatened with litigation. But the supreme court held that the attorney-client exception applies "when a public body seeks legal advice concerning litigation strategy." *Id.* In the adversarial system, "certain phases of litigation strategy may be impaired if every discussion is available for the benefit of opposing parties who may have as a purpose a private gain in contravention to the public need as construed by the agency." *Id.* (quoting *HRA,* 310 Minn. at 323, 251 N.W.2d at 625). Significantly, attorneys' professional obligation to protect the confidentiality of their client's communications and the advice given was the basis for the supreme court's recognition of the attorney-client exception to the open-meeting law. *HRA,* 310 Minn. at 319, 251 N.W.2d at 623. And in *HRA,* an affidavit by an attorney showed that the closed meetings were necessary to protect the "trial strategy and settlement proposals." *Id.* at 316–17, 251 N.W.2d at 622. In contrast, in *Prior Lake,* there was no such affidavit with this type of information. *Prior Lake,* 642 N.W.2d at 740.

Here, special counsel addressed the city council concerning the need for absolute confidentiality and also submitted an affidavit outlining his concerns. He explained that a closed session was necessary for the following reasons: (1) he needed a candid and open discussion regarding matters that could affect litigation, including defense strategy and possible areas of reconciliation; (2) the scope of representation was limited to claims by the peace coalition regarding denial of permission to march in the parade and no other business would be addressed; (3) nothing was pending before the city council on the decision as to the parade; (4) the open session would be detrimental because it would take place in the presence of potential litigants; and (5) a closed session would benefit the public because any financial liability incurred would be taxpayer-funded. We have no reason to doubt these assertions, and nothing in the record suggests that anything other than litigation strategy and settlement options was discussed.

In addressing the attorney-client-privilege exception, courts have also considered whether the attorney advising a closed meeting was an attorney provided by the city's insurer. In *HRA,* the supreme court found it significant that:

> The record discloses that tort cases against the HRA are handled by lawyers retained by insurance companies. Certainly, in this respect, if the board were required to meet with the insurance company's lawyer on a specific case, that consultation should not be subject to public scrutiny as an "open meeting" contemplated by the statute.

310 Minn. at 323, 251 N.W.2d at 625–26.

■ The Dispatch contends that this factor is not especially relevant because the critical question is not who retains the attorney, but what circumstances prompt the closing of the meeting. This argument is not without merit. But we must also acknowledge that in most cases, the presence of counsel retained by the city's insurer suggests that the circumstances

prompting counsel's presence involve more than a routine request for general legal advice.

In conclusion, based on the undisputed facts presented in this case, we conclude that the purposes of the attorney-client privilege were legitimately served here.

We now turn to the other side of the balancing test and examine the purposes of the open-meeting law. The primary question concerns "the public's right to be informed of all actions and deliberations made in connection with activities geared to ultimately affect the public interest." *Prior Lake,* 642 N.W.2d at 739 (quoting *HRA,* 310 Minn. at 318, 251 N.W.2d at 623).

▮▮▮ The open-meeting law is designed to avoid secret meetings, to allow the public to be informed about public officials' decision-making, and to allow members of the public to present their views to their public officials. *St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Sch.,* 332 N.W.2d 1, 4 (Minn.1983). We note that the legislature has largely eliminated concerns about secret meetings by specifically requiring notice for all closed meetings, which would include those closed pursuant to the attorney-client privilege. Minn.Stat. § 13D.04, subd. 5 (2002). Even when the meeting is closed under the attorney-client-privilege exception, the city council must inform the public of the subject of the closed meeting and the grounds for closure. Minn.Stat. § 13D.01, subd. 3 (2002). Further, the statement as to the grounds for the closure must be made with particularity. *Free Press v. County of Blue Earth,* 677 N.W.2d 471, 477 (Minn. App.2004).

When meetings are properly closed under the attorney-client-privilege exception, the public is denied access only to the legal advice that the attorney gives the city council regarding litigation strategy and

there is to be no discussion or decisions about other city business. Further, the supreme court has recognized that there are times when the public does not have a right to know the legal advice given a governmental body: "A basic understanding of the adversary system indicates that certain phases of litigation strategy may be impaired if every discussion is available for the benefit of opposing parties who may have as a purpose a private gain in contravention to the public need as construed by the agency." *HRA,* 310 Minn. at 323, 251 N.W.2d at 625. Nevertheless, the supreme court has cautioned against abuse of the attorney-client privilege:

> Public board members, sworn to uphold the law, may not arbitrarily or unnecessarily inflate confidentiality for the purpose of deflating the spread of the public meeting law. Neither the attorney's presence nor the happenstance of some kind of lawsuit may serve as the pretext for secret consultations whose revelation will not injure the public interest.

*Id.* at 321, 251 N.W.2d at 624 (quotation omitted).

In addressing this factor, courts have questioned whether the legal advice was part of the decision-making process that should have been open to the public. *Prior Lake,* 642 N.W.2d at 739–40. In *HRA,* the closed session was sought for the express purpose of discussing litigation strategy in a lawsuit challenging the adequacy of an environmental-impact statement. 310 Minn. at 315, 251 N.W.2d at 621. In *Prior Lake,* the city council sought a closed session to obtain legal advice on whether to require an environmental-assessment worksheet in conjunction with an application for a conditional-use permit currently pending before the council. 642 N.W.2d at 739. Significantly, in *Prior*

*Lake,* the supreme court held that the city council did not need information concerning possible litigation to decide the specific issue before them, namely whether to require an environmental-assessment worksheet. *Id.* at 739. Further, given the contentious nature of development decisions, the court was "concerned about the ramifications of holding that open meetings may be closed to allow council members to meet with an attorney about how to view a threat of litigation relating to a public matter that has yet to be decided." *Id.* at 739–40.

Here, the city sought legal advice regarding threatened litigation as a result of BCA's denial of the parade permit. The Dispatch contends that whether a decision had been made or not should not be a determinative factor because a city council can always change its mind. Thus, the Dispatch argues that it is irrelevant that BCA had already denied the peace coalition permission to march in the parade when the council voted to close the meeting. But unlike in *Prior Lake,* no decision was pending before the city in which public involvement could change the result, and no other meetings were held to discuss the issuance of a permit. This court must decide the case on the facts before the court, not on facts that may some day be present in other cases. Thus, the concern that a closed meeting will prevent citizens from having input as to public matters is not present here.

■ We also note that safeguards are in place to ensure that the privilege is not abused. First, we take very seriously the fact that city attorneys have an ethical duty to assure that the exception is properly applied. Minn. R. Prof. Conduct 1.13(b) (providing that a lawyer for an organization may take reasonable measures to address an officer's unlawful conduct); *id.* cmt. (providing a government lawyer has greater authority than a private lawyer to question a client's conduct because public business is involved). Second, the penalties for violating the open-meeting law, including civil penalties and the possibility of ouster from public office upon three violations, serve as strong incentives to prevent abuse of the exception. Minn.Stat. § 13D.06, subds. 1, 3 (2002). Third, attorney fees of up to $13,000 may be awarded for violations. *Id.,* subd. 4(a). And finally, voters have the authority to vote elected officials out of office if they abuse the exception.

■ We now turn to the ultimate question of whether the balancing of the purposes of the attorney-client privilege against those served by the open-meeting law dictates the need for absolute confidentiality. *See Prior Lake,* 642 N.W.2d at 731. Here, in a thorough and well-reasoned order, the district court found that the city's need for absolute confidentiality outweighed the purposes served by the open-meeting law. Specifically, the district court determined:

> In applying the preceding balancing test, the Court finds that the scales tip in [respondents'] favor in this case. Absolute confidentiality was necessary so that the City and the council could determine the available legal options to avoid litigation for a decision that had already been made. No action that the Council took could change that decision, but there clearly were actions that could be taken to minimize liability of the City and to avoid litigation. The purpose of the closed meeting was not to make a decision behind closed-doors as was the case in *Prior Lake American,* but instead the purpose of the meeting was to determine and deal with the consequences of a publicly made decision that had led to imminent legal action.

The need to have confidential discussions with specially appointed counsel and to discuss strategies to defend against potential claims and avoid financial damages outweighs the purposes of the Minnesota Open Meeting Law in this case. The Court further concludes that the [respondents] invoked the attorney-client privilege in good faith and not to thwart the purpose of the Minnesota Open Meeting Law.

The district court properly considered and balanced the competing factors, and we conclude that the attorney-client exception to the open-meeting law was properly invoked based on the need for absolute confidentiality.

### DECISION

The decision by the district court granting summary judgment on the Dispatch's claim of an open-meeting law violation is affirmed.

**Affirmed.**