*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2197**

Sheryl V. Mooers,
Appellant,

vs.

City of Lake City, Minnesota, et al.,
Respondents,

Karen England, individually,
Respondent.

**Filed July 7, 2014
Affirmed in part, reversed in part, and remanded
Peterson, Judge**

Wabasha County District Court
File No. 79-CV-12-697

Lisa Ann Lofquist, Villaume & Schiek, P.A., Bloomington, Minnesota (for appellant)

Julie Anne Fleming-Wolfe, St. Paul, Minnesota (for respondents City of Lake City, et al.)

Peter C. Sandberg, Sandberg & Sandberg, Rochester, Minnesota (for respondent Karen England)

Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**PETERSON**, Judge

Appellant challenges the district court's grant of summary judgment to respondents on her claims of sexual harassment, defamation, invasion of privacy, and data-practices violations arising out of her employment with respondent city, and denial of her discovery motion. We affirm in part, reverse in part, and remand.

## FACTS

In 2010, respondent City of Lake City hired appellant Sherry V. Mooers as a library administrator. When she was hired, respondent Jerry Dunbar was the mayor of Lake City, respondent Mark Spence was a city-council member, and respondent Karen England was the city attorney. Mooers's supervisor was city administrator Ron Johnson.

Mooers made many changes in the city library; she received support from some city residents and encountered fierce resistance from others. A controversy arose when Mooers disciplined, demoted, and suspended children's librarian Diane Spence, who had also been a candidate for the library-administrator position, and who was married to Mark Spence. Johnson and England told Mooers that she could not demote or reassign Diane Spence, who nevertheless resigned.

Shortly after, England relayed to Dunbar that she had received complaints that Mooers and Johnson were having an affair and that Mooers had committed fraud on her employment application. England did not identify the complainants. The fraud allegation was based on an article in a Colorado newspaper that quoted Mooers as saying that she had been fired from a library-director position "without explanation or

2

evaluation." The library-board president in Colorado responded in the article that "Mooers was a probationary employee who was not offered a permanent contract" and that she had not been fired. On her Lake City application, Mooers stated that her former job had been temporary and had ended.

The city council held a meeting about the allegations and spoke separately in closed sessions with Mooers and with Johnson. After the meeting was opened to the public, city council member Phil Gartner moved "that the allegation of a personal relationship by the City Administrator and the Library director (Administrator) be dismissed." The motion passed unanimously.

One week after the meeting, the local newspaper published an article stating that the council had "heard complaints that Mooers and City Administrator Ron Johnson were having a 'personal relationship'" and that Mooers "may have committed fraud by misrepresenting her record when she applied for the job last year." The article mentioned the Colorado newspaper as the source of the latter allegation. The article further noted that "[t]he council voted unanimously not to look into either charge." The article stated that "England said the 'personal relationships' issue was raised by two people, anonymously, who visited her office" and that the "Colorado issue also was brought to England anonymously and was alluded to in a signed written complaint turned in through the city's normal citizen complaint process." The article also stated that "England said she merely passed the information on to the mayor. Dunbar said he called a special meeting at the city attorney's insistence." The reporter, Rich Ousky, stated in his deposition that England was not the source of the story about the closed meeting. In her

deposition, Mooers stated that these allegations and the newspaper story damaged her reputation and caused her to be passed over for some library positions after her employment with the city was terminated.

Mooers testified in her deposition and answers to interrogatories that Dunbar made unwelcome sexual advances toward her beginning shortly after she took the library-administrator job. She also produced pages of her diary in which she described incidents involving Dunbar. Mooers testified that she rejected Dunbar's advances and was repelled by his conduct, but she also exchanged friendly e-mails with Dunbar. In the e-mails, Dunbar apologized for hugging Mooers, and she reassured him that she was not offended. Mooers testified that she told Johnson about the sexual harassment, in accordance with the employee handbook.

On November 28, 2011, the city council met in a closed session without Mooers to discuss "[her] request for a pay/step increase, and a credit card purchase made by [her] on the city credit card on 10/11/11 that included alcohol and gratuities." Mooers received a written reprimand for the credit-card purchase. On January 31, 2012, the city council suspended Mooers with pay for further problems with the credit-card billing and scheduled a special closed meeting to discuss Mooers's performance issues, including insubordination, concerns about an illegal raffle, untimely submission of invoices, unpaid staff meetings, and other issues. On February 23, 2012, the city council met in a closed session without Mooers, and discussed Mooers's job performance. At the following open session, the council voted to terminate Mooers's employment.

Mooers served a complaint against the city, Dunbar, Mark Spence, and England, alleging violations of the Minnesota Government Data Practices Act (MGDPA), the Minnesota Open Meeting Law (OML), common-law defamation and defamation under 42 U.S.C. § 1983 (2012), invasion of privacy, sexual harassment under 42 U.S.C. § 1983, retaliation under the Minnesota Whistleblowers Act, and a claim for quantum meruit. In response to a discovery request, the city provided Mooers with redacted transcripts of the council meetings of November 28 and February 23. The district court denied Mooers's motion to compel the city to produce unredacted transcripts. Respondents moved for summary judgment, which the district court granted.

On appeal, Mooers challenges the district court's summary judgment on her claims for sexual harassment, defamation, invasion of privacy, and violations of the data-practices act and the denial of her discovery motion.

## DECISION

We review the district court's grant of summary judgment de novo, to determine whether there are any unresolved genuine issues of material fact and whether the district court properly applied the law. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co,.* 825 N.W.2d 695, 704 (Minn. 2013). We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.* "A genuine issue of material fact must be established by substantial evidence." *Id.* (quotation omitted). Summary judgment may be granted if the party opposing it has the burden of proof on an essential element and fails to "present specific admissible facts showing a material fact issue." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012) (quotation

5

omitted).  Summary judgment can be granted even when an issue normally presents a question of fact, if no rational trier of fact could find for the nonmoving party.  *Frieler v. Carlson Mktg. Group*, 751 N.W.2d 558, 564 (Minn. 2008).

## I.

Mooers argues that the district court erred in granting summary judgment on her sexual-harassment claims under 42 U.S.C. § 1983 against the city and against Dunbar individually.  The district court held that her claim against the city failed because there is no evidence showing that the city had a custom or policy of permitting sexual harassment.  The district court concluded that the claim against Dunbar failed because there is no evidence showing that Dunbar's conduct was unwelcome or that his conduct affected a term, condition, or privilege of her employment.

Section 1983 provides a basis for sexual-harassment claims involving violations of federal rights by state action or public officials.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38, 102 S. Ct. 2764, 2769-70 (1982).  Section 1983 claims may not be brought against a private party or entity, but only against an actor who infringes on a person's federal rights, when the action is "fairly attributable to the State."  *Id.*, 457 U.S. at 838, 102 S. Ct. at 2770 (quotation omitted).  Section 1983 prohibits a person acting "under color of any statute, ordinance, regulation, custom, or usage of any State" from depriving a citizen of "any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "Sexual harassment by state actors violates the Fourteenth Amendment and establishes a section 1983 action."  *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (stating that elements of cause of action are the same as those for a

6

violation of Title VII, except for requirement of state action). Therefore, in addition to a "state action," a plaintiff must show (1) membership in a protected group; (2) subjection to unwelcome sexual harassment; (3) that the harassment was based on gender; and (4) "that the harassment affected a term, condition, or privilege of her employment." *Duncan v. Gen'l Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002) (quotation omitted).

A government entity is liable under section 1983 if it "had an official policy or widespread custom that violated the law and caused [the plaintiff's] injury. . . . An alleged illegal custom must be widespread and may only subject a [government entity] to liability if it is pervasive enough to have the force of law." *Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1181-82 (8th Cir. 1998) (quotation and citations omitted). *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018, 2036 (1978) ("[T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort").

Mooers included in her materials the employee handbook, which contains a policy prohibiting sexual harassment. To show that the city nevertheless had a widespread custom of permitting sexual harassment, Mooers would have to show that sexual harassment was "pervasive" and "widespread." Even viewing the evidence in the light most favorable to Mooers, the record contains no evidence of a widespread and pervasive custom of permitting sexual harassment, but rather is limited to Dunbar's actions. "A government entity is not liable under § 1983 based on actions of its employees under a theory of respondeat superior." *Artis*, 161 F.3d at 1181. *See also Monell*, 436 U.S. at

7

691, 98 S. Ct. at 2036 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). The district court did not err by granting summary judgment in favor of the city.

As to Mooers's claims against Dunbar individually, the evidence is mixed as to whether the alleged sexually harassing acts were unwelcome, and we must view the evidence in the light most favorable to the nonmoving party on summary judgment.

To withstand summary judgment, Mooers was required to show that the alleged sexual harassment affected a "term, condition, or privilege of her employment." *Duncan*, 300 F.3d at 933. "To be actionable, the alleged harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tuggle*, 348 F.3d at 720 (quotation omitted). Generally, a few isolated incidents are not actionable, unless the conduct is shocking and severe. *Id.*; *see, e.g., Moring v. Arkansas Dep't of Corr.*, 243 F.3d 452, 456-57 (8th Cir. 2001) (refusing to reverse district court decision denying JMOL despite isolated nature of conduct, when actor trapped co-worker in her room on an overnight trip, wore only his boxer shorts, suggested she "owed" him sex, and refused repeated requests to leave). When considering whether conduct is sufficiently serious to affect the terms and conditions of employment and create a hostile working environment, courts consider the frequency and severity of the conduct, whether it was humiliating or physically threatening, as opposed to merely offensive, and whether it unreasonably interfered with the employee's ability to work. *Id.* at 456.

Dunbar was the city mayor and arguably Mooers's ultimate supervisor. Mooers alleged conduct by Dunbar that she considered humiliating and that occurred on several occasions, and she provided deposition testimony and excerpts from her diary to support these claims. It is not the district court's role on summary judgment to weigh the evidence and assess Mooers's credibility. *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 320 (Minn. 2007). We conclude that Mooers has raised at least a genuine issue of material fact as to whether Dunbar's conduct constituted sexual harassment under section 1983. We, therefore, reverse the district court's grant of summary judgment as to Dunbar and remand to the district court for further proceedings.

**II.**

Mooers's defamation claims are based on statements made at the city-council meeting held on March 10, 2011. Mooers alleged defamation under both common law and section 1983 against the city and against England. To prove a claim of common-law defamation, a plaintiff must show (1) a false statement (2) communicated to another (3) that tends to harm the plaintiff's reputation or lower him in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980). "Slanders affecting the plaintiff in his business, trade, profession, office or calling are slanders per se and thus actionable without any proof of actual damages. Truth, however, is a complete defense, and true statements, however disparaging, are not actionable." *Id.* (citations omitted).

A high-level public official is entitled to absolute immunity from tort when performing an official duty that requires the exercise of judgment or discretion, unless his

9

actions are willful, malicious, or intentional. *Minke v. City of Minneapolis*, 845 N.W.2d 179, 182 (Minn. 2014); *Bauer v. State*, 511 N.W.2d 447, 450 (Minn. 1994). A public official is entitled to qualified immunity if an otherwise defamatory statement is "made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause." *Id.* at 449. Generally, city-council members have qualified immunity from defamation claims, so long as they do not abuse the privilege and act in good faith and without malice. *Zutz v. Nelson*, 788 N.W.2d 58, 62 (Minn. 2010).

Mooers claims that the city made defamatory statements (1) during the closed portion of the meeting on March 10, 2011; (2) during the open portion of the same meeting; and (3) to reporter Ousky, who wrote an article about the meeting. Any statements made during the closed portion of the meeting were made only to city-council members and Mooers. Because the council is charged with investigating employee misconduct, it has qualified immunity: any statements made were for a proper purpose, and the purpose was not abused. *See id.*

Mooers's next claim is that council-member Gartner's motion during the open portion of the meeting was defamatory. Gartner moved that "the allegation of a personal relationship by the City Administrator and the Library director (Administrator) be dismissed." Gartner's statement was made for a proper purpose upon a proper occasion; at the conclusion of a closed meeting, the council is required to make a report of the business transacted in the closed meeting. *See* Minn. Stat. § 13D.05, subd. 3(a) (2012) (after a closed meeting to evaluate an individual's performance, the public body must summarize its conclusions at the next open meeting). Gartner's statement was a true

10

statement about what occurred during the closed meeting and, therefore, is not defamatory. *See Stuempges*, 297 N.W.2d at 255.

Mooers's third claim against the city is that someone gave information from the closed meeting to Ousky, who wrote an article that was published in the local paper. In his deposition, Ousky testified that (1) neither Johnson nor Mooers gave him information about the closed meeting; (2) he did not remember any city-council member or England giving him any information about the allegation of fraud in Mooers's application; and (3) he asked England how the allegations of a personal relationship were made, and she said there had been anonymous complaints. In the news article, he wrote that the source of the fraud allegation was a newspaper publication from Colorado.

Implicit in any cause of action against a party is the requirement that the defendant was involved in the alleged conduct. Mooers argues that information in the article must have come from either a council member or England, but such information could have come from the parties who made the anonymous complaints or from someone in whom Mooers or Johnson confided. Failure to identify the source of the statement is a fatal defect in Mooers's defamation claim.

Mooers also has not demonstrated that the statements in the article are either false or defamatory. Ousky reported that two allegations were made, explained the context of the fraud allegation by referring to the Colorado news article, and noted that the council "voted unanimously not to look into either charge." He further wrote that "One council member said the meeting should never have been called since there was no evidence for either of the charges brought."

11

In her claim against England individually, Mooers alleges that England defamed her by reporting to the council that she had received complaints about a personal relationship between Johnson and Mooers and that Mooers committed fraud on her application. Mooers asserts that England's testimony and answers to interrogatories were conflicting and therefore not credible. She notes that England said that there were no complaints, just rumors, and that she refused to identify the source of the rumors, either because she did not remember or she promised the complainants anonymity.

England referred the two allegations to the city council in her capacity as city attorney. As such, England is entitled to qualified immunity, so long as she acted in good faith and without malice. *See Zutz,* 788 N.W.2d at 62. "Actual malice requires a showing that the defamatory statements are made from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 920 (Minn. 2009) (quotation omitted). Malice requires something more than a statement that is later shown to be false. *Id.* As city attorney, England was required to investigate alleged wrongdoing and to draw it to the city council's attention, and thus was acting "upon a proper occasion, from a proper motive, and based upon reasonable or probable cause." *Bauer*, 511 N.W.2d at 449.

Finally, Mooers did not produce evidence of damage to her reputation, except for conclusory statements from one person that the incident hurt Mooers's reputation. Mooers argues that she lost her job and future job opportunities because of the allegations, but the city terminated her employment almost one year later for other

reasons. The district court properly granted summary judgment on the common-law defamation claims.

Mooers also alleged defamation claims under section 1983. As explained above, a claim under section 1983 must involve state action that infringes on a person's constitutional rights. *See Rendell-Baker*, 457 U.S. at 837-38, 102 S. Ct. at 2770. Mooers alleges that the defamatory statements at the March 10 meeting infringed on her right to secure employment, asserting that is a constitutionally protected property right. Her termination from the city and her denial of other employment occurred almost a year after the meeting. She has failed to demonstrate a connection between statements made at the meeting and her termination a year later on other grounds or her failure to find other employment. The same reasoning applies to her claims against England. Even viewing the evidence in the light most favorable to Mooers, this connection is too attenuated to be actionable.

### III.

Mooers argues that the district court erred when it granted summary judgment on her invasion-of-privacy claim. The district court concluded that Mooers failed to demonstrate that any one of the respondents was responsible for dissemination of private information and that the information published was of legitimate concern to the public.

The tort of invasion of privacy applies in three different situations: intrusion on seclusion, appropriation of a person's identity, or publication of private facts. *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233-35 (Minn. 1998). Mooers's claim falls under the third situation: "when one gives publicity to a matter concerning the private life

of another if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Id.* (quotation omitted). "Publicity" means that the matter is communicated to "the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553-54 (Minn. 2003) (quotation omitted).

The publicity element is not at issue; Mooers's claims that Gartner's motion regarding allegations of a personal relationship and statements made to Ousky and reported by Ousky in the paper satisfy the publicity element. *See Yath v. Fairview Clinics, N.P.*, 767 N.W.2d 34, 42-43 (Minn. App. 2009) (stating that publicity includes publication in a newspaper or other publication no matter how limited the circulation or a statement made to a large audience).

But the district court concluded that the information was of legitimate concern to the public. According to the Restatement (Second) of Torts § 652D cmt.d (1977), "When the matter to which publicity is given is true, it is not enough that the publicity would be highly offensive to a reasonable person. The common law has long recognized that the public has a proper interest in learning about many matters. When the subject-matter of the publicity is of legitimate public concern, there is no invasion of privacy."

The city had a policy against sexual harassment, which includes a supervisor and an employee having an affair; the city hired Mooers based on her application and later received information that the application may have included fraudulent statements; and rumors or complaints involving these allegations were brought to the city attorney's

14

attention. The city council's conclusion that these allegations were unfounded was a matter of legitimate concern to the public. The comment to the Restatement states,

> [T]he Supreme Court indicated that an action for invasion of privacy cannot be maintained when the subject-matter of the publicity is a matter of 'legitimate concern to the public.' The Court held specifically that the 'States may not impose sanctions for the publication of truthful information contained in official court records open to public inspection.' Other language indicates that this position applies to public records in general.

*Id.* (quoting *Cox Broad. Co. v. Cohn*, 420 U.S. 469, 495, 95 S. Ct. 1029, 1046 (1975)). The statements at the council meeting and the information in the newspaper article were all part of official public records. The district court did not err by granting summary judgment on Mooers's invasion-of-privacy claim.

## IV.

Mooers limited her appeal of the district court's summary-judgment order governing her claim under the MGDPA to two alleged violations: Gartner's motion on March 10, 2011, and disclosure of the allegations against her to reporter Ousky. The district court concluded that Mooers did not demonstrate any damages as a matter of law arising out of Gartner's motion and that she failed to identify any of the respondents as the source of Ousky's information.

The MGDPA, Minn. Stat. §§ 13.01-.99 (2012), "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities." *Id.*, § 13.01, subd. 3. Data are presumed public, unless made confidential, private, nonpublic, or protected nonpublic by law or statute. *Id.* Data on individuals are

15

public, private, or confidential. *KSTP-TV v. Ramsey Cnty.*, 806 N.W.2d 785, 789 (Minn. 2011). Private or confidential data on individuals are not open to public access. *Id.*

Personnel data are data on an employee that identify the person who is the subject of the data. *Navarre v. S. Washington Cnty. Schools*, 652 N.W.2d 9, 22 (Minn. 2002). Personnel data are private, except as set forth in Minn. Stat. § 13.43, subd. 2, which lists personnel data that are public. Included in public personnel data are "the existence and status of any complaints or charges against the employee, regardless of whether the complaint or charge resulted in disciplinary action" and "the final disposition of any disciplinary action together with the specific reasons for the action." *Id.* at subd. 2(a) (4), (5).

A government entity's disclosure of complaints or charges is limited to acknowledging the existence of a complaint, and cannot include "any quality or characteristic of the complaint, whether general or specific." *Navarre*, 652 N.W.2d at 22-23. But this court has also stated that "[w]e cannot believe the legislature intended the term 'government data,' to be literally interpreted to include unrecorded data that exist only in the human brain. Interpreting 'government data' to include mental impressions formed by public employees during the course of employment would lead to absurd results." *Keezer v. Spickard*, 493 N.W.2d 614, 617 (Minn. App. 1992), *review denied* (Minn. Feb. 12, 1993). This court went on to state:

> [A]n individual has no cause of action under the [data-practices] Act for the unauthorized release of private data about him unless he shows the information released was recorded somewhere other than in the mind of a government employee. . . . A plaintiff must point to an actual record

16

> whose contents have been disseminated to give rise to a claim for improper release of government data under the Act. A plaintiff cannot establish the Act was violated merely by showing a government employee said something about him and that statement contained information that arguably might be stored in a government record.

*Id.* at 618.

The city council investigated allegations about Mooers in a closed meeting. At the conclusion of the meeting, a final disposition was made: there was no basis for the allegations. Gartner's motion revealed the final disposition of a disciplinary action, which is public data. Mooers has not pointed to an actual record whose contents have been disseminated by Gartner's description of the complaint as a "personal relationship," which is necessary to give rise to a claim for improper release of government data under the act.

Mooers's second allegation, that someone disclosed private data to reporter Ousky, includes the same defect as her claim of defamation: she speculates that one of the respondents must have provided Ousky with the information. A mere allegation, without a factual foundation, is insufficient to sustain her burden of production. Minn. R. Civ. P. 56.05 (stating that when opposing summary-judgment motion, "an adverse party may not rest upon the mere averments or denials . . . but must present specific facts showing that there is a genuine issue for trial"). The information contained in the article describes the complaint and a final disposition ("[t]he council voted unanimously not to look into either charge") and involves only public personnel data. The district court did not err by granting summary judgment on Mooers's data-practices claims.

17

Mooers argues the district court abused its discretion by denying her discovery motion for unredacted transcripts of the closed November 28, 2011 and February 28, 2012 meetings. Mooers asserts that the city violated the OML, Minn. Stat. §§ 13D.01-08 (2012), when it produced redacted transcripts of the closed meetings held on November 28, 2011, and February 23, 2012, in response to her discovery request. The city asserted attorney-client privilege for the redacted portions. The district court viewed the transcripts in camera and agreed that Mooers was entitled to only the redacted versions. Mooers's challenge is to the district court's discovery order; we review the district court's discovery orders for an abuse of discretion. *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007).

All meetings of a governing body of a city must be open, subject to limited exceptions. Minn. Stat. § 13D.01, subd. 1. A meeting may be closed based on attorney-client privilege, under certain conditions. Minn. Stat. § 13D.05, subd. 3(b). A meeting may be closed "to evaluate the performance of an individual who is subject to its authority." Minn. Stat. § 13D.05, subd. 3 (a). If the subject of such a meeting requests it, however, the meeting must be open. *Id.* Both the November 28 and February 23 meetings were closed; Mooers was given the option to, but did not, request open meetings. "All closed meetings, except those closed as permitted by the attorney-client privilege, must be electronically recorded . . . ." Minn. Stat. § 13D.05, subd. 1(d).

The attorney-client privilege is a narrow exception to the OML. *Prior Lake Am.*, 642 N.W.2d 729, 735 (Minn. 2002); *Brainerd Daily Dispatch v. Dehen*, 693 N.W.2d 435,

18

439 (Minn. App. 2005), *review denied* (Minn. Jun. 14, 2005). The OML serves the purpose of promoting full public information and permitting and encouraging public participation in the governing process; the attorney-client privilege creates "absolute confidentiality." *Prior Lake American*, 642 N.W.2d at 736-37. "[T]he attorney-client privilege exception to the Open Meeting Law applies when the balancing of purposes served by the attorney-client privilege against those served by the Open Meeting Law dictates the need for absolute confidentiality." *Id.* at 737. The attorney-client privilege most often trumps the purpose of open meetings when the discussions involve legal advice about litigation strategy. *Id.* at 740. It should not trump the public's right to full disclosure "of all actions and deliberations made in connection with activities ultimately geared to the public interest." *Id.* at 741 (quotation omitted). Noting that the separation-of-powers doctrine limits judicial review of a public body's actions, the supreme court concluded that review of a public body's actions for arbitrariness and capriciousness is almost impossible when the body closes its deliberations to public view. *Id.* at 741-42.

But nothing in the law prohibits a mixture of private business and attorney-client confidences during a closed meeting. Presumably, the council could have held an open or closed meeting about Mooers and could have held another closed meeting to receive legal advice about the city's options with respect to Mooers. In *Annandale Advocate v. City of Annandale*, the supreme court approved a procedure for closing parts of meetings to reconcile the OML with the MGDPA. 435 N.W.2d 24, 32-33 (Minn. 1989).

The district court reviewed the council's actions and its claim of attorney-client privilege through transcripts of the closed meetings. The district court's subsequent

19

decision to permit redaction of the transcripts for purposes of discovery is a decision subject to abuse-of-discretion review. *In re Comm'r of Pub. Safety*, 735 N.W.2d at 711. Mooers has failed to show an abuse of the court's discretion.

**Affirmed in part, reversed in part, and remanded.**